# Exhibit A

# SUMMONS
## COURT OF COMMON PLEAS
## LAKE COUNTY OHIO

FIRENZA STONE INC.
                Plaintiff

      .    VS.                        Case Number: **22CV000681**

                                       Judge PATRICK J. CONDON

BRETON USA CUSTOMER SERVICE CORP et al
                Defendant

To the following named DEFENDANT(S):
                BRETON S.P.A.
                VIA GARIBALDI, 27-31030
                CASTELLO DI GODEGO (TV) ITALY
                UNKNOWN UNK 00000

You have been named a Defendant in a complaint filed in the Lake County Court of Common Pleas, Lake County Courthouse, Painesville, Ohio. A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:

                JEFFREY J. FANGER ESQ
                FANGER & DAVIDSON LLC
                8396 MAYFIELD ROAD
                CHESTERLAND OH 44026

You are hereby summoned and required to do the following:

1. **Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;**

2. **Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.**

                **Calculations of time are exclusive of the day of service.**

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

                                    Faith Andrews
                                    Clerk, Court of Common Pleas
                                    Lake County, Ohio
                                    25 N. Park Place
                                    Painesville OH 44077

                              By *CRAIG ANDERSON*

                              Deputy Clerk

June 1, 2022

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

Firenza Stone Inc.                )
33205 Curtis Blvd.                )          CASE NO.
Eastlake, OH 44095                )
     Plaintiff                )
    vs.                    )          JUDGE:
                        )
BRETON USA Customer               )
Service Corp                      )          COMPLAINT
1753 Northgate Blvd.              )          (TRIAL BY JURY DEMANDED)
Sarasota Florida 34234            )
                        )
And                               )
                        )
Breton S.p.A.                     )
Via Garibaldi, 27-31030           )
Castello di Godego (TV) Italy     )
     Defendants                )

      Now comes the Plaintiff, Firenza Stone Inc., an Ohio Corporation, by and through undersigned counsel and for their Complaint against Defendant, Breton USA Customer Service Corp, based on information and belief to be a Florida Corporation and Defendant Breton S.p.A. based on information and belief an Italian Corporation states the following:

1.  Plaintiff, Firenza Stone Inc., ("Firenza Stone") is an Ohio Corporation, Charter No. 1532656 and has its principle place of business at 33205 Curtis Blvd. Eastlake, Ohio 44095.

2.  Plaintiff, Firenza Stone is in the cabinet, counter top and granite stone business and primarily provides luxury counter tops and related items to both commercial and residential customers. As part of its business Firenza Stone cuts and modifies marble, granite and other stone slabs to fit customer specifications for installation at their respective business or residence.

3. Breton S.p.A. based on information and belief is an Italian based company located at Via Garibaldi, 28-31030 Castello di Godego (V), Italy and that manufactures and sells stone cutting equipment used in the counter top and commercial trades.

4. Based on information and belief, Breton S.p.A. (hereafter Breton Italy) through an exclusive contract with its affiliate Breton USA Customer Service Corp (hereafter Breton USA) of 1753 Northgate Blvd, Sarasota, Florida 34234 sells and services its machinery through its United States operations out of its Breton USA Customer Service Corp facilities.

5. On or about June 7, 2018 Firenza Stone purchased and was invoiced for a Bridge Saw with Axes known as a Combicut DJ/INC 550 with Diamond Saw Blade and Water Jet and a Contour Breton NC300K26 CNC Stone Machining Center and related additional equipment necessary for the performance and operation of these two primary machines (hereafter referred to as the Bridge Saw and Contour Machines respectively) and as set forth on the June 7, 2018 invoice for said equipment. (See Exhibit 1)

6. On or about October 23, 2018 and October 25, 2018 Firenza Stone received the installed equipment and authorized payment for the machines.  (See Exhibit 2, Acceptance Certificates)

7. Firenza Stone paid Breton USA and/or Breton Italy, Five Hundred Fifty-Four Thousand, Five Hundred and Eight Dollars ($554,408.00) for the referenced equipment through bank transfer as acknowledged on the invoice of June 7, 2018 (Exhibit 1) and the Acceptance Certificates (Exhibit 2) and Contract terms (Exhibit 3)

8. Breton USA and/or Breton Italy delivered said equipment and Breton USA installed said equipment at Firenza Stone's facility at 33205 Curtis Blvd., Eastlake, Ohio 44095 from on or about October 20 – 25, 2018.

2

9. Defendant Breton S.p.A. (Breton Italy), based on information and belief is a duly formed Italian corporation that supplies stone cutting equipment to customers in the United States of America and regularly sells equipment to United States of America customers throughout the fifty states through its affiliate Breton USA.

10. Defendant Breton USA Customer Service Corp. has a team of sales agents that focus on territories and maintains a sales agent to handle the Ohio market and at the time in question used Jerry Van Der Bos as its Ohio sales agent.

11. Defendant Breton USA Customer Service Corp. maintains a Detroit Area Facility located at 6107 Progressive Drive, Unit D, Sterling Heights, MI 48312 to service in part the Ohio market.

12. Defendant Breton S.p.A. is an Italian based company which manufactures and sells equipment to the United States exported from Italy. Based on information and belief, the sales of the equipment manufactured by Defendant Breton S.p.A. is sold by Defendant Breton USA Customer Service Corp as the authorized sales representative of Defendant Breton S.p.A.

13. Based on information and belief, the equipment purchased by Firenza Stone as indicated on the June 7, 2018 invoice was manufactured and shipped from Italy to Ohio by Defendant Breton S.p.A. (Breton Italy) and installed by Defendant Breton USA on or about October 20 – 25, 2018.

14. Defendant Breton USA Customer Service Corp services include the sale of equipment in the United States on behalf of Defendant Breton S.p.A. and the service of that equipment.

15. Defendant Breton USA Customer Service Corp has the exclusive contract to service Breton S.p.A. equipment throughout North America. (See Exhibit 4, Website Information)

3

16. Defendant Breton USA Customer Service Corp promote the sale of their equipment claiming that their service keeps Breton "machines running smoothly" and claim that the Breton brand has a positive reputation for "performance and dependability". (See Exhibit 4)

17. Defendant Breton USA Customer Service Corp as part of their communication to sell equipment state that "each and every machine that Breton USA sells upholds a high standard of quality, performance and safety." (See Exhibit 4)

18. Defendant Breton USA Customer Service Corp as the exclusive servicing agent for Breton S.p.A. machines promise "Surpassing Your Service Expectations". (Exhibit 5, Website Information.)

19. Defendant Breton USA Customer Service Corp states that it provides "a level of service and support equal to the reputation for quality and excellence that is carried by the machines themselves." (Exhibit 5). In fact, Defendant Breton USA Customer Service Corp claims that "no one is more qualified to service Breton's North American clients than the Breton USA organization."

20. Defendant Breton Italy states that while it is located in Castello di. Godego, Veneto Italy, "the firm is operating worldwide" and therefore acknowledges it operates in the state of Ohio. (Exhibit 6, Website Information)

21. Based upon the representations of both Defendant Breton USA and Breton Italy as well as their respective sales staff including but not limited to Jerry Van Der Bos the sales agent involved specifically in this transaction, Firenza Stone entered into a contract to purchase the referenced equipment from Breton USA and/or Breton Italy sometime between June 2018 and October 25, 2018. Breton provided numerous documents with numerous contract dates and the parties

4

continued to negotiate terms and conditions with the equipment finally being installed fully on October 25, 2018.

22. When being enticed into entering into the contract, Buyer, Firenza Stone was assured that the Breton equipment was dependable, highly reliable and that the machines would run smoothly and had a strong reputation for performance and dependability by both Breton USA and Breton Italy. Firenza Stone was further assured that the Breton equipment was of a high standard of quality, that it operated at a high standard of performance and safety by both Breton USA and Breton Italy.

23. Firenza Stone relied upon these representations when entering into the purchase contract for the equipment set forth on the June 7, 2018 invoice.

24. Firenza Stone was also assured by Breton USA that Firenza Stone would receive necessary service of the equipment through Breton USA and that said service would equal the reputation for quality and excellence that the machines had and that Breton USA was the most qualified party to service the machines in the United States.

25. Firenza Stone relied upon these assurances when entering into the contract to purchase the equipment.

26. Firenza Stone relied upon the warranties provided by the manufacturer Breton Italy with respect to the equipment and further relied upon the warranties provided by the servicer Breton USA throughout their ownership of the equipment and with respect to the service warranties that were provided after each service date.

27. Firenza Stone relied upon the fact that the equipment shall be merchantable and that said merchantability was implied in the contract between the parties for the sale of the equipment and that the seller Breton S.p.A. is a recognized merchant with respect to the kind of equipment

sold. Firenza Stone relied upon the implied warranty of merchantability and usage in trade (UCC 2-314 and ORC §1302.27) in purchasing the equipment and relied upon the implied warranty of merchantability (UCC 2A-212 and ORC §1310.19) and expected the goods purchased to: 1) pass without objection in the trade under the description presented, 2) be fit for the ordinary purposes for which stone cutting machinery is used in the industry, 3) Run, within the variation permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved, 4) conform to the promises and affirmations of fact made by the sales team, on the labels and set forth in the agreement and 5) perform in a manner consistent with the general expectations and course of dealings used in the trade of stone cutting and manufacture for which the equipment is marketed.

28. Breton provided multiple drafts of its contractual agreement with multiple dates of contracting, from November 10, 2017 through June 2, 2018 and therefore the exact date of contracting for the equipment is in dispute as the terms of the agreement and equipment purchased continued to be modified until on or about June 2, 2018 and the equipment was not installed until October 20 – 25, 2018.

29. On or about October 20, 2018 two technicians arrived from Breton to install the machines and equipment starting with the Combicut unit.

30. Craig Lovejoy on behalf of Plaintiff Firenza Stone supervised and assisted with the installation. Based on Mr. Lovejoy's extensive experience with installation it became apparent to him that the two technicians were not familiar with the installation of the Breton equipment and required a third technician to arrive from Italy after two days.  A substantial amount of time over the two-day period was spent needlessly attempting to level the machinery to 1/32 of an inch – a

task completely unnecessary as each rail was adjustable and clearly the technicians were unfamiliar with the equipment adjustment abilities.

31. During the installation there were multiple issues including the Breton technicians deciding not to use the underground pre-installed conduit due to their inability to properly pull wire resulting in above installation of the wiring protected by a stainless-steel cover spanning about eight (8) feet which would have been properly installed underground through the existing conduit.

32. The three Italian technicians spoke in Italian and did not utilize the services or communicate regularly with Mr. Lovejoy during the installation and instead ran the installation without his substantive involvement.

33. Mr. Lovejoy was present during the installation and observed but due to the language barrier was unable to fully participate.  Mr. Lovejoy also observed that so much time was wasted by the technicians during the installation process that very little effort was given to operator training and no time was given to maintenance training issues.  One of the technicians also departed before the others, further reducing the ability to provide the proper initial training and installation services.

34. Mr. Lovejoy had expected to receive training on important maintenance issues such as electrical identification routing pathways and junction box identification which was not provided due to a lack of time remaining by the technicians.

35. On or about October 25, 2018, the technicians departed and within hours of their departure due to the lack of adequate training, Firenza Stone employees had to contact Breton by telephone for assistance in the operation of the equipment.

36. On or about the first week of April 2019, Mr. Lovejoy was again involved with the CNC Machine not functioning properly.   Mr. Lovejoy arrived at Firenza Stone and learned that Breton had instructed Firenza Stone to "bypass the problem" so that the machine could run and to "call their local electrician".  Upon inspection, Mr. Lovejoy learned that Breton technical support, had instructed Firenza Stone employees to bypass the emergency stop circuit to permit the equipment to run.  Mr. Lovejoy recognized this as an unacceptable safety recommendation and proceeded to isolated every circuit and tested it, eventually determining that an emergency stop button on the pendant was in the activated state causing the shut-down of the machinery. Mr. Lovejoy cleared these issues and the machine was able to resume functioning.

37. Breton instead of instructing Firenza Stone on isolating the circuits to determine the malfunction, acted recklessly and negligently in instructing Firenza Stone to bypass a safety device in order to get the machine back up and running instead of walking through the process of isolating each circuit and identifying the cause of the emergency stop circuit from operating.

38. On April 12, 2019, Anthony Fimiani of Firenza Stone expressed concern to Breton through its agent Gerry Van Der Bas at that time of LPE Group North America, the designated Breton Agent for Ohio, that Firenza Stone "feel neglected and caught up in red tape" due to the lack of proper training and responses from Breton regarding software issues with the machinery.

39. The equipment from Breton had a myriad of issues commencing from installation forward including early issues with the laser.  Those issues resulted on April 13, 2019 in Mr. Van Der Bas stating to Mr. Fimiani that "The Breton service department is fully responsible for after sale schedule, pricing, proposals and execution." Mr. Van Der Bas also informed Mr. Fimiani that Mr. Egon Hinss, National Sales Manager for Breton was being informed of the issues and "Ultimately they are the deciders for this."   Mr. Van Der Bas assured Mr. Fimiani that "All

involved here want you to be fully satisfied.  We all agree there have been complications, and this is fairly normal with a new installation of this magnitude."

40. On May 16, 2019, Dominic Fimiani informed Morena Ziliotto, Technical Service Coordinator Breton USA Customer Service Corporation, that there was "water seeping in through the sleeve where the HP waterline passes thru." in the Combicut machinery.  He inquired whether this issue had ever happened before and if there were preventative measures to address it.  He did not receive a response from Breton as to whether the issue had ever occurred before.

41. On or about June 3, 2019, Dominic Fimiani again contacted Mr. Ziliotto, and informed him that Firenza Stone was now "having serious doubts" about the machines.  At that point the machines had required that the Siemens relay switch be replaced, the proximity sensors be replaced and the pinch valve was failing.  Mr. Fimiani expressed his concern to Mr. Ziliotto stating "To me, these are parts that should not have these kinds of problems so early on in the life of this machine.  These are parts that should last a very very long time.  These malfunctions cause down time.  Something that I was told I didn't need to worry about because the machines are reliable.  I don't think that I need to tell how concerning it is when these machines are down.  I was sold on the fact that these machines were very reliable, I have doubts about that reliability.  Those doubts are strong in everyone concerned here."

42. Due to the high number of issues and the lack of reliability Firenza Stone sales staff started requesting that their projects not be done on the Breton machinery due to a loss of confidence in its reliability due to the plague of problems the machines were having.

43. On June 3, 2019, Mr. Dominic Fimiani emailed Mr. Ziliotto and Mr. Van Der Bas, stating that "I was not expecting this much trouble to be quite honest with you".

44. Sensors were repeatedly failing for the new equipment resulting in Mr. Ziliotto requesting that relays that went bad be sent to him to evaluate.  Firenza Stone was never provided any information regarding that evaluation or information as to why the sensors were failing so quickly after initial operation.

45. On June 3, 2019 Mr. Ziliotto, responded to Mr. Fimiani stating "The switches and Siemens contactor are very unusual to fail in this machine or others.  If you have still the pieces there please send along the pinch valve so we could inspect and find the reason of the problem.  I am sorry you got this impression but this machine is very reliable."

46. On June 4, 2019 Mr. Van Der Bas responded stating "I promise you that the parts we are discussing here are actually the top of all you can buy on the market.  This does not reassure you when you are experiencing too much downtime and I consider any at this stage unacceptable.  Failures like this from these vendors are unusual."

47. Firenza Stone was never provided follow up with respect to the evaluation purportedly performed by Breton regarding the failing sensors and valves.

48. On June 4, 2019 Mr. Dominic Fimiani inquired about an oil leak and whether it was a concern and was told to simply wipe it up and determine how bad the leak was – "In case we performed the training how to disassemble the intensifier and replace the gaskets if it is necessary."  Said training should have been provided during installation.

49. On June 5, 2019, Mr. Ziliotto asked Mr. Dominic Fimiani "I need to ask you a favor.  Is it possible to have the old pinch value inside a box ready for a pick up?  We need to send it to KMT in Kansas for further evaluation."

50. Firenza Stone experienced multiple failures of the Pinch Valve resulting in Garnet being spilled into the air resulting in costly clean ups to remove the garnet from their facility.  The pinch

valve problems were on going for months resulting in substantial delays, customer projects being cancelled and multiple unsuccessful replacements of the pinch valve.

51. Firenza Stone never received information regarding the KMT evaluation of the pinch valve. Eventually the pinch valve was completely replaced by a different manufactures model as the one original to the machine repeatedly failed despite repeated replacements. The valve was sent to Breton on or about June 6, 2019.

52. On June 11, 2019, Egon Hiss, National Sales Manager for Breton USA contacted via email Mr. Dominic Fimiani and informed him that a KMT tech will be there the next day and that "In the meantime, we are able to get the saw running by bypassing the intensifies if you choose to do this." Mr. Hiss further stated "Tomorrow we will you have you up (sic) and running the way it should have been from day one."

53. On or about June 20, 2019, Mr. Ziliotto informed Mr. Dominic Fimiani that the software had a problem with a dxf file.

54. On June 26, 2019, Mr. Fimiani informed Mr. Ziliotto that the machinery was down again.

55. On July 1, 2019, Kelly Messner, one of the top sales representatives for Firenza Stone emailed Breton management, Mr. Van Der Bas, Mr. Ziliotto, Mr. Hinss, Mr. Filippetto and Mr. Toncelli expressing serious concerns with the reliability of the equipment and its impact on Firenza Stone. Ms. Messner documented that the machines were having an excessive amount of failures and that this was not common with respect to prior machinery she had used in the industry for 28 years. She informed Breton and its agents that "In the six to seven months we have been using your equipment, production has been halted more than ten times. The down time has been for, at least twenty-four hours, each time. In one case, the same part failed two times." Ms. Messner further informed Breton that the unreliability of the equipment had

resulted in "disappointing countless customers".  Ms. Messner went on to state that "Dependability issues with your machine has added much unnecessary strain and stress on your growing company.  The amount of damage control we have had to do in the past seven (7) months has superseded the total amount over the past sixteen (16) years."  Ms. Messner further stated that "My background in this industry and having worked with this type of machinery from your competitors has led me to the belief that your Combicut was not installed properly.  Further, the problems have been compounded using faulty parts from KMT."

56. On July 3, 2019, Mr. Ziliotto responded to Ms. Messner's email, stating "In order to avoid these matters in the future, we have reported all of your issues to our electric and mechanical engineers."  Mr. Ziliotto also presented his list of known issues stating:

    i.)    "On April 30 an electric component in the KMT control failed.  The material was in stock so we sent these parts the next day.

    ii.)    On May 16 you reported an alarm on the A axis hardware limit switch.  Thanks to your cooperation we found out that the switch was contaminated from humidity.  The parts were in stock and we sent them the next day.

    iii.)    On June 3rd the first pinch valve failed.  The rubber membrane had some holes.  We had the part in stock and we sent it next day.

    iv.)    On June 10 the second pinch valve failed out and we got KMT involved, in order to solve the situation.  We had their technician change the valve.  Unfortunately, they were unable to send the valve from Kansas, because the UPS courier did not pick up the box from their location.  KMT recognized the mistake and they sent the part the following day.  A KMT technician showed up on June 12, along with our technician Guido, coming down from Detroit.

v.)  On June 26 the top rotating swivel started to spray water. We sent a new joint along with a rebuild kit the next day, as well as a technician for Detroit to replace and test it."

Mr. Ziliotto went on to state "I am sorry you have had all these failures in such a short period of time. ... I don't think these issues are related to the machine installation because they are components already pre-assembled before the installation."

57. No other parties on behalf of Breton responded to Ms. Messner's email other than Mr. Ziliotto and Mr. Van Der Bas.

58. On or about July 5, 2019 Ms. Messner, further responded to all parties stating that Mr. Ziliotto's list of issues "lack many more incidents" and that "Throughout these months, using your equipment, the lack of production has dramatically dropped and the customer disappointed has increased. I would expect your company to get the Combicut in proper working order sooner rather than later."

59. On or about January 14, 2020, Dominic Fimiani informed Mr. Van Der Bas that "My concern is that this is now the fourth OEM part for this unit in a years time span and not to mention my shop getting blasted with dust again." ... "I am sure you are aware this is not a sustainable course to stay on. From here I really need to get some answers on what to do about this. I'm hoping together we can come up with a solution to this persistent problem, maybe we can discuss when you get back to me."

60. On January 14, 2020, Mr. Van Der Bas responded "FYI Your valid question was forwarded to managers of parts service and sales. I will inform you if so have a response." Mr. Van Der Bas's email tag under his name stated "The most well constructed, best featured, and well supported machines available in the world".

61. Firenza Stone never received a substantive response.

62. On or about January 21, 2020 Mr. Van Der Bas contacted Pat Angliolilo of KMT and informed him that "… the pinch valve has gone again. I believe this is third in about six months…. To my knowledge this is not supposed to be such a frequent replacement item."

63. On or about January 22, 2020 Pat Angliolilo of KMT sent an email to Gerry Van Der Bas stating in part "I have passed along your note to our technical/service department. I have asked them to look into this matter to determine if the German made part was used and if the setting of differential air was done per the manual. If the air differential is not set up properly, regardless of which pinch valve was used, it will fail within 6 months of operation."

64. On February 25, 2020 Mr. Van Der Bas responded again to issues from Firenza Stone stating that "upper level management at KMT" was looking into the matter to try to resolve it.

65. On March 26, 2020, Dominic Fimiani contacted Egon Hinss informing him that no resolution had been received and no response had been received from KMT.

66. Problems with the machines continued resulting in excessive down time, lost customer sales, and damages materials.

67. On or about March 9, 2020, Mr. Zillioto sent an email to Dominic Fimiani indicating that it is "NOT a general problem for Breton" Machines to have sensor problems.

68. On or about March 13, 2020, through counsel, Firenza Stone again reached out in an effort to get attention sending letters to Egon Hinss at Breton, and Pat Angliolilo of KMT, Firenza Stone requested a meeting with techs of Breton and senior management of both Bretton and KMT.

69. Despite repeated requests over several months, neither KMT nor Breton ever met with Firenza Stone to evaluate the equipment as requested although a meeting did previously occur between Vand Der Bas, Hins and Dominic Fimiani following the repeated failures of the pinch valves.

14

70. On or about May 7, 2020 Kimberly Balychev of Breton in response to counsel's March 13, 2020 letter sent a letter proposing an in-person visit, to date no in-person visit ever occurred. Breton repeatedly cited issues with respect to travel restrictions related to the pandemic as the reason why they could not participate and both Breton and KMT declined to ever attend the in-person meeting.

71. On or about July 20, 2020, Mike Cusinato, of Breton USA Customer Service also cited COVID as a reason restricting tech support due to claimed travel limitations.

72. On or about July 18, 2020 Mr. Lovejoy was also involved in another incident regarding Breton technical support wherein Breton technical support determined that there was a junction box within the head system that needed to be accessed and when accessed revealed to be half full of water.   This box was supposed to be water tight.

73. On or about July 20 2020, Mr. Ziliotto recommended that to fix the issue of water in the water proof electrical box, "I simply suggest that you clean the electrical box, replace eventually the connector withte h faulty (sic) sensor and drill a small hole to the bottom of the box so in case water gets' inside, it drains out right away."   He also indicated that tech support travel was difficult due to COVID although interstate travel was not restricted during this time.

74. The Breton technician that was sent to Firenza Stone "fixed" the problem of the water in the electrical junction box by replacing the terminal block, drilled a hole in the bottom of the box so that water could not accumulate in the supposedly water tight box and recommended turning the box upside down so the wires came in from underneath to minimize water penetration.  By drilling a hole in a water tight box to "fix" it from filling with water, Breton acted recklessly and negligently.

75. On or about November 22, 2020 Mr. Van Der Bas, responding to additional concerns from Firenza Stone about the on-going problems stated "… I try so hard to make sure the companies I represent act correctly. If there is anything I can do to help you. I'm still here, and hope you understand that I never meant for you to have problems the way you did, and always did what I could to help."

76. On November 23, 2020 Dominic Fimiani again informed Mr. Van Der Bas of problems with the machinery, specifically the HP Whip forming a hole which he believed again failed prematurely. Mr. Fimiani again indicated that "problems persist" with the Breton equipment.

77. On March 18, 2021 Firenza Stone notified Defendant's Breton USA and Breton Italy that "The bladder on the hopper blew again this morning." Again, Firenza Stone informed Defendants that the problem was reoccurring despite no other changes to the machinery.

78. On March 18, 2021 Firenza Stone notified Defendant Breton USA that "another HP Line blew on the intensifier. One more and we will have replaced every HP line on the intensifier in under 3 years."

79. On March 24, 2021, again the water tight box registered error messages giving rise to a belief that it was again filling up with water. Mr. Lovejoy again was involved in the evaluation and interfaced with Breton technical support, however, this time there was no actual water in the box but instead it was discovered that the prior repair by the Breton technician had resulted in bare wire sticking out of the terminal strip for a collision alarm, causing it to short to ground.

80. On or about March 24, 2021, in conversations with Mr. Lovejoy, Breton technical support stated that this was a known problem and that it has occurred about six months ago and again Breton recklessly and negligently recommended that Firenza Stone bypass the collision alarm to resolve the problem.

81. By recommending to by-pass a collision alarm, Breton support acted recklessly and negligently and created a potentially unsafe condition that if left unchecked will cause a catastrophic crash to the head assembly.

82. The equipment purchased by Firenza Stone from Breton was purchased based on assurances of reliability in its operation. But for those assurances Firenza Stone would not have purchased the equipment from Breton.

83. On March 31, 2021 Firenza Stone notified Mr. Van Der Bas, and Breton USA that "the proximity sensor C 73546010 had shorted out and caused the shutdown. This is now the second time we have experienced a shutdown because of one of the two sensors on the piston assembly that raises and lowers the jet head. The machine was down for several days on the first incident and am now facing the same fate here. I have attached pictures of the problem. Please note the burned and melted wiring and sensor damage.... This is extremely troubling; this is a very unreliable machine."

84. On April 1, 2021 Mr. Van Der Bas, in response to the continuing issues with the machines expressed by Firenza Stone responded that "I know you are dissatisfied and with reason. It is not the experience I'm used to having reported."

85. On or about April 19, 2021 Firenza Stone in multiple emails notified Defendant Breton USA, Mr. Ziliotto that "We have to replace this HP Tube" and that "I replaced the IDE and focusing tube last week... I will replace the hose as well and see if that corrects it." And further notified them that they were "experiencing a problem with the vacuum assist.

## COUNT 1 Breach of Contract

86. Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 85 as if rewritten herein.

87. Plaintiff, Firenza Stone entered into a contract based upon the assurances and representations of Breton USA and Breton Italy that were specifically used to encourage Plaintiff to engage in a contractual relationship for the purchase of equipment from the Defendants. But for those assurances and representations, Plaintiff would not have entered into the contractual relationship and would not have purchased the equipment. (Exhibits 1, 2, 3)

88. Defendants have breached the contract between the parties by not providing equipment that operated in a fashion reasonable and common in the trade for the work it was intended to perform.

89. Defendants have breached the contract between the parties by not effectively providing training and service in a timely and effective manner as intended and promised in the contract between the parties.

90. Defendants have breached the contract between the parties by failing to properly repair and replace defective parts in a timely manner.

91. Defendants have breached the contract by providing repair procedures and advice that was improper and contrary to appropriate safety and electrical requirements in the trade and industry.

92. Defendants have breached the contract by providing equipment that operated in a substandard fashion resulting in substantial damage to Plaintiff due to loss of operating capacity, customer orders, damage to property and increased repair costs.

93. Plaintiff has been damaged due to the loss of production capacity, loss of customer orders, loss of production time, clean-up costs associated with garnet spillage, substantial repair and maintenance costs, and other costs to be set forth at trial as a result of Defendants' breach of the contract, in an amount in excess of $25,000.

## COUNT 2 Right To Revoke Contract R.C. §1302.66

94. Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 — 93 as if rewritten herein.

95. Defendant Breton USA and Defendant Breton Italy have been repeatedly requested to properly repair and/or replace the equipment purchased by Plaintiff.

96. Despite numerous attempts at repair and correction, Defendants have failed to be able to seasonably cure the non-conformity of the equipment purchased.

97. Plaintiffs have been materially harmed by this non-conformity of the equipment including damages as a result of loss of operating capacity, customer orders, damage to property and increased repair costs.

98. Plaintiff is executing its right of revocation within a reasonable time after Plaintiff has discovered or should have discovered the ground for the revocation and before any substantial change in condition of the goods which is not caused by their own defects.

99. Plaintiff has repeatedly notified the Seller that they do not want the equipment, that the equipment is defective and to take back the equipment and said notification can be implied based upon the above statements and comments regarding the failure of the equipment as well as direct requests to Defendants to rescind the contract and take back the equipment.

100. Plaintiff's notice to the Seller of the defects in the equipment along with its notice to the Seller to take back the equipment was timely and reasonably given.

101. Plaintiff's notice to the Seller of the defects in the equipment along with its notice to the Seller to take back the equipment was before any substantial change in the condition of the equipment occurred that was not a result of defects in the equipment itself.

102. Plaintiff pursuant to R.C. 1302.66(A)(1) seeks to revoke the contract between the parties due to Defendant Breton Italy's failure to seasonably cure non-conformity of the equipment. (Exhibits 1, 2, 3)

103. Plaintiff seeks to be refunded its purchase price for the equipment pursuant to its right to revoke the contract and such further relief as this Court deems just and proper.

## COUNT 3 Breach of Implied Warranty of Merchantability, §1310.19

104. Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 103 as if rewritten herein.

105. Defendant Breton Italy is a merchant with respect to stone cutting equipment of the type and kind purchased by Plaintiff from Defendant.

106. The equipment purchased by Plaintiff from Defendants has had an excessive number of issues, repairs and problems that are not standard or customary with respect to the equipment or the standard use in the trade.

107. The problems and issues would not pass without objection in the trade under the contract description and have not operated in a manner that is consistent with the expectations in the trade as demonstrated by the numerous emails exchanges between the parties referencing the abnormality of the needed repairs as set forth herein.

108. The equipment purchased by Plaintiff from Defendant Breton Italy is not fit for the ordinary purposes of stone cutting in a reliable and consistent fashion for which said equipment is used in a commercial stone cutting facility.

109. The equipment purchased by Plaintiff from Defendant Breton Italy does not run, within the variations permitted by the agreement or expected in the trade.

110. The equipment does not conform to the promises or affirmations of fact made by Defendants in their sales promotional materials, contract or communications with Plaintiff.

111. The Equipment does not conform to the standard course of dealings or regular and expected usage in the trade for stone cutting equipment of this type and kind.

112. Defendant Breton Italy has breached the Implied Warranty of Merchantability resulting in damages to Plaintiff.

113. Plaintiff has been damaged due to loss of operating capacity, customer orders, damage to property, clean-up costs and increased repair costs as a result of Defendant Breton Italy's breach of the Implied Warranty of Merchantability.

114. Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy's breach of the Implied Warranty of Merchantability and such further relief as this Court deems just and proper.

## Count 4 Breach of Implied Warranty of Merchantability,

## Usage of Trade RC. §1302.27

115. Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 114 as if rewritten herein.

116.   The equipment purchased by Plaintiff from Defendants has had an excessive number of issues, repairs and problems that are not standard or customary with respect to the equipment or in the standard use in the trade.

117.   The problems and issues would not pass without objection in the trade under the contract description and have not operated in a manner that is consistent with the expectations in the trade as demonstrated by the numerous emails exchanges between the parties referencing the abnormality of the needed repairs.

118.   The equipment purchased by Plaintiff from Defendant Breton Italy is not fit for the ordinary purposes of stone cutting in a reliable and consistent fashion for which said equipment is used in the trade.

119.   The equipment purchased by Plaintiff from Defendant Breton Italy does not run, within the variations permitted by the agreement or expected in the trade.

120.   The equipment does not conform to the promises or affirmations of fact made by Defendants in their sales promotional materials, contract or communications with Plaintiff.

121.   The Equipment does not conform to the standard course of dealings or regular and expected usage in the trade for stone cutting equipment of this type and kind.

122.   Defendant Breton Italy has breached the Implied Warranty of Merchantability resulting in damages to Plaintiff.

123.   Plaintiff has been damaged due to loss of operating capacity, clean-up costs, customer orders, damage to property and increased repair costs as a result of Defendant Breton Italy's breach of the Implied Warranty of Merchantability.

124.   Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy's breach of the Implied Warranty of Merchantability.

COUNT 5 Breach of Express Warranties R.C. §1302.26

125. Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 124 as if rewritten herein.

126. Defendants Breton USA and Breton Italy made express promises and warranties with respect to the quality and reliability of their equipment. (Exhibit 3)

127. Plaintiff relied upon those express promises and warranties when entering into the contract to purchase the equipment.

128. Defendant Breton Italy made express affirmations of fact and promises with respect to the reliability and performance of their equipment which directly related to the goods purchased by Plaintiff and which became a part of the basis of the bargain and thereby created an express warranty that the goods would perform in a reliable consistent fashion as promised and affirmed by Defendant Breton Italy and Defendant Breton USA.

129. Defendant Breton Italy and Defendant Breton USA through its sales force, its online marketing and its communications with Plaintiff set forth description of the goods reliability and performance which was made a part of the basis of the bargain between the parties and created an express warranty that the goods would perform in a reliable and consistent fashion.

130. By expressing statements regarding their reliability and performance as part of the sales effort, Defendant Breton Italy and Defendant Breton USA created an express warranty of performance that was relied upon by Plaintiff.

131. The numerous issues, repairs and failures of the equipment purchased by Plaintiff from Defendant Breton Italy has breached the express warranties of affirmation, promise and description provided by Breton Italy and Breton USA and relied upon by Plaintiff.

132.   Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy and Defendant Breton USA's breach of the Express warranties by affirmation, promise and description.

## COUNT 6 Breach of Implied Warranty of Fitness
## for a Particular Purpose R.C. §1302.28

133.   Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 132 as if rewritten herein.

134.   Breton Italy and Breton USA at the time of contracting had reason to know that Plaintiff was relying upon the reliability representations of their sales force with respect to the equipment and that Plaintiff was expecting the stone cutting equipment purchased to operate and be fit for the particular purpose of stone cutting in a commercial setting in a reliable and consistent fashion.

135.   Breton Italy and Breton USA know or should have known that Plaintiff was relying on Defendant's skill or judgment to select or furnish suitable equipment and that said equipment carried with it an implied warranty that the goods shall be fit for such purpose.

136.   Defendants have breached the implied warranty that the goods shall be fit for the purpose of reliable stone cutting equipment in a commercial setting.

137.   Plaintiffs have been harmed by Defendants breach of the implied warranty that the goods shall be fit for the purpose of reliable stone cutting equipment in a commercial setting and seek damages in excess of $25,000 for Defendants breach and such further relief as this Court deems just and proper.

## COUNT 7 Breach of Course of Performance and Dealing and

## Usage of Trade R.C. §1301.303

138.   Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 137 as if rewritten herein.

139.   Plaintiffs relied upon representations by Breton USA as to a course of performance with respect to the quality and reliability of their maintenance and service.

140.   Plaintiffs contracted with Breton USA and Breton Italy to receive training and service.

141.   Plaintiff was not provided adequate training due to delays by Breton USA and Breton Italy during the installation process.

142.   Plaintiff was not included in the installation process by Breton USA and/or Breton Italy and was excluded from the installation process in part due to the installation being done in Italian and in part due to the installers lack of adequate knowledge of the proper installation techniques.

143.   Plaintiff understood upon entering into the contract with Breton Italy that both Breton Italy and Breton USA its designated representative would provide consistent reliable service and training with respect to the equipment being purchased.

144.   Plaintiff relied upon the statements made by Breton Italy and Breton USA with respect to a course of dealing with respect to the anticipated repair and maintenance of the equipment, training and the high quality of both their equipment and their service operation.

145.   Plaintiff was repeatedly frustrated in its dealings with both Breton Italy and Breton USA with respect to that course of performance, inadequate training and was often given incorrect and even unsafe instructions by Breton USA and/or Breton Italy.

146.   Breton USA and Breton Italy failed to provide the services in a fashion that would be customary in the trade and required by the contract between the parties and failed to perform its services in a fashion that is reliable and common in the trade.

147.   Plaintiff has been damaged in an amount in excess of $25,000 due to Breton Italy and Breton USA's Breach of Course of Performance and Dealing due to its failure to properly provide training and services and at times provide unsafe and unsound advice and maintenance services to Plaintiff.

## Count 8 Declaratory Judgment Regarding Arbitration Clause

148.   Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 147 as if rewritten herein.

149.   Defendant Breton Italy's Contract with Plaintiff is a contract of adhesion containing boilerplate language and terms that are inherently unjust and unreasonable. (Exhibit 3)

150.   Defendant Breton Italy's contract with Plaintiff contains a boiler plate arbitration provision buried on page 24 that is unreasonable, unjust and not properly agreed to by the parties.

151.   Defendant Breton Italy has failed to comply with the terms and conditions of the contract by refusing to meet with Plaintiffs on site to review the problems despite repeated requests to meet.

152.   Defendant Breton Italy has failed to comply with the terms and conditions of the contract with respect to its obligation to consult and negotiate in good faith in an effort to settle disputes between the parties.

153.   Defendant Breton Italy's requirement that arbitration or mediation be held in the State of New York where neither Breton USA, Breton Italy or Firenza Stone have office operations is

inherently unreasonable, unjust and an over reach meant to simply penalize Plaintiff and force Plaintiff into an arbitrary unrelated forum.

154.    Plaintiff seeks a declaratory judgment that Defendant Breton Italy's arbitration requirement in New York is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

## Count 9 Declaratory Judgment Regarding Warranty Policy

155.    Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 154 as if rewritten herein.

156.    Defendant Breton Italy's Contract with Plaintiff is a contract of adhesion containing boilerplate language and terms that are inherently unjust and unreasonable. (Exhibit 3)

157.    Defendant Breton Italy's contract with Plaintiff contains a boiler plate warranty policy buried on page 22 that is unreasonable, unjust and not properly agreed to by the parties.

158.    Defendant Breton Italy's warranty policy is contrary to public policy.

159.    Defendant Breton Italy's six-month warranty time period is unreasonable.

160.    Since Defendant Breton Italy has transferred its maintenance and service services to Defendant Breton USA, Defendant Breton Italy's warranty policy is illusory and therefore void.

161.    Defendant Breton Italy's warranty policy which purports to be in lieu of all other warranties fails to properly comply with the requirements of R.C. §1310.21 and or R.C. §1302.29 in that it is not set off in a separate paragraph and it is not sufficiently clear and distinct so as to give a buyer appropriate warning and knowledge and therefore is void.

162.    Defendant Breton Italy's warranty policy is not conspicuous and is buried in the boilerplate language of the contract and therefore is void.

163.    Defendant Breton Italy's warranty policy is not conspicuous as a matter of law as it is not in compliance with R.C. §1301.01(J) as it is buried deep in the contract, has the restrictions of warranties set forth in the middle of a column of text, and fails in the heading to mention merchantability and therefore is not presented in a fashion that a reasonable person against whom it is to operate would have notice of it and therefore is void.

164.    Plaintiff seeks a declaratory judgment that Defendant Breton Italy Warranty Policy is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

## COUNT 10 Declaratory Judgment Regarding Excluded Liability

165.    Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 164 as if rewritten herein.

166.    Defendant Breton Italy's Contract with Plaintiff is a contract of adhesion containing boilerplate language and terms that are inherently unjust and unreasonable. (Exhibit 3)

167.    Defendant Breton Italy's contract with Plaintiff contains an unreasonable Excluded Liability clause on page 24 that is in conflict with Plaintiff's rights under R.C. §1302.89 and which unreasonably and unconscionably limits Breton Italy's liability under the contract and purports to prevent Plaintiff from recovering for all of its damages resulting from Breton Italy's faulty equipment.

168.  Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Excluded Liability provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**Count 11 Declaratory Judgment Regarding Statute of Limitations Reduction**

169.  Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 168 as if rewritten herein.

170.  Defendant Breton Italy's Contract with Plaintiff is a contract of adhesion containing boilerplate language and terms that are inherently unjust and unreasonable. (Exhibit 3)

171.  Defendant Breton Italy's contract with Plaintiff contains an unreasonable Statute of Limitations clause on page 24 that is in conflict with Plaintiff's rights under Ohio law including but not limited to R.C. §1302.98 and which unreasonably and unconscionably shortens Plaintiff's rights to bring an action against Breton Italy under the contract and purports to prevent Plaintiff from recovering for all of its damages resulting from Breton Italy's faulty equipment.

172.  Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Statute of Limitations provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**COUNT 12 Declaratory Judgment Regarding**

**Applicable Law and Forum Selection Clause**

173.  Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 172 as if rewritten herein.

174. Defendant Breton Italy's Contract with Plaintiff is a contract of adhesion containing boilerplate language and terms that are inherently unjust and unreasonable. (Exhibit 3)

175. Defendant Breton Italy's contract with Plaintiff contains an unreasonable Applicable Law and Forum Selection Clause that arbitrarily selects the law of the State of New York as governing the contract despite the fact that neither Breton Italy, Breton USA or Plaintiff have any operations or offices in the State of New York.

176. Defendant Breton Italy's Forum Selection Clause is void as against public policy as there is no bona fide business interest, is an unreasonable burden upon the buyer and it amounts to impermissible forum shopping without adequate notice to the buyer and therefore is void.

177. Defendant Breton Italy's Applicable Law and Forum Selection clause is arbitrary, unconscionable and unreasonable and is buried on page 24 of the contract between the parties and therefore is void.

178. No reasonable buyer would expect or anticipate a forum selection clause to place the parties in a jurisdiction where neither party has operations or offices.

179. No reasonable buyer would expect or anticipate an applicable law provision selecting law that is in a territory or state where none of the parties has known offices or facilities.

180. Defendant Breton Italy's Applicable Law and Forum Selection clause unreasonably has the parties submit to jurisdiction where the equipment was not installed, serviced or maintained, where to the best of Plaintiff's knowledge and belief Defendant Breton USA does not have an office or operation (which are located in Florida and/or Detroit) and where Defendant Breton Italy does not have an office or operation (which are located in Italy).

181.   Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Applicable Law and Forum Selection provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

## COUNT 13 Negligence

182.   Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 — 181 as if rewritten herein.

183.   By providing unsafe maintenance instructions and advice, including but not limited to instructions regarding the repair of a water proof box, and instructions regarding wiring and equipment repairs that by-passed safety systems, Breton USA actions were negligent.

184.   By engaging in negligent repair instructions, Breton USA was negligent in its repairs needlessly extending the amount of time and damages incurred by Plaintiff as a result of said negligent repair recommendations.

185.   By engaging in negligent repairs, Breton USA's actions are outside the scope of the contract between the parties.

186.   By providing negligent repair instructions, Breton USA directly harmed Plaintiff resulting in repeated equipment failures, loss of customers, and loss of production time.

187.   Plaintiff seeks damages for Breton USA's negligent acts in an amount in excess of $25,000 including compensation for loss of customers, loss of production time, clean-up of facility, and such further relief as this Court deems just and proper.

## COUNT 14 Gross Negligence and Unconscionable Behavior

188.  Plaintiff Firenza Stone repeats each allegation set forth above in paragraphs 1 – 187 as if rewritten herein.

189.  By providing unsafe maintenance instructions and advice, including but not limited to instructions regarding wiring and equipment repairs that by-passed safety systems and alarms, Breton USA's actions were grossly negligent and unconscionable.

190.  By engaging in grossly negligent repair instructions, Breton USA needlessly extended the amount of time and damages incurred by Plaintiff as a result of said grossly negligent repair recommendations.

191.  By providing grossly negligent repair instructions, Breton USA directly harmed Plaintiff resulting in repeated equipment failures, loss of customers, and loss of production time.

192.  By providing grossly negligent repair instructions, Breton USA acted outside of the scope of the contract between the parties.

193.  Plaintiff seeks damages for Breton USA's gross negligent acts in an amount in excess of $25,000 including compensation for loss of customers, loss of production time, clean-up of facility, as well as its attorney fees and punitive damages in an amount sufficient to curtail said actions in the future as well as such further relief as this Court deems just and proper.

**WHEREFORE** having set forth its claims herein, Plaintiff seeks judgment against Defendants Breton Italy and Breton USA as follows:

**As to Count 1:** Plaintiff has been damaged due to the loss of production capacity, loss of customer orders, loss of production time, clean-up costs associated with garnet spillage, substantial repair

and maintenance costs, and other costs to be set forth at trial as a result of Defendants' breach of the contract, in an amount in excess of $25,000.

**As to Count 2:** Plaintiff seeks to be refunded its purchase price for the equipment pursuant to its right to revoke the contract and such further relief as this Court deems just and proper.

**As To Count 3:** Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy's breach of the Implied Warranty of Merchantability pursuant to R.C. §1310.19 and such further relief as this Court deems just and proper

**As to Count 4:** Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy's breach of the Implied Warranty of Merchantability, Usage of Trade pursuant to R.C. §1302.27 and such further relief as this Court deems just and proper.

**As To Count 5:** Plaintiff seeks damages in excess of $25,000 for Defendant Breton Italy and Defendant Breton USA's breach of the Express warranties by affirmation, promise and description.

**As To Count 6:** Plaintiff has been damaged in an amount in excess of $25,000 due to Breton Italy and Breton USA's Breach of Course of Performance and Dealing due to its failure to properly provide training and services and at times provide unsafe and unsound advice and maintenance services to Plaintiff.

**As To Count 7:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's arbitration requirement in New York is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**As To Count 8:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Warranty Policy is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

33

**As To Count 9:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Excluded Liability provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**As To Count 10:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Statute of Limitations provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**As To Count 11:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Applicable Law and Forum Selection provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**As To Count 12:** Plaintiff seeks a declaratory judgment that Defendant Breton Italy's Applicable Law and Forum Selection provision is invalid and void as against public policy and that the enforcement of the clause is unjust and unreasonable.

**As To Count 13:** Plaintiff seeks damages for Breton USA's negligent acts in an amount in excess of $25,000 including compensation for loss of customers, loss of production time, clean-up of facility, and such further relief as this Court deems just and proper.

**As to Count 14:** Plaintiff seeks damages for Breton USA's gross negligent acts in an amount in excess of $25,000 including compensation for loss of customers, loss of production time, clean-up of facility, as well as its attorney fees and punitive damages in an amount sufficient to curtail said actions in the future as well as such further relief as this Court deems just and proper.

**As to all Counts:** Plaintiff seeks its costs herein and such further relief as this Court deems just and proper.

Respectfully submitted,
FANGER & DAVIDSON LLC

Jeffrey J. Fanger, Esq. (0058439)
Gerry Davidson, Esq. (0022467)
8396 Mayfield Rd.
Chesterland, OH 44026
Ph. 216-479-6820
Fax 216-479-6801
jfanger@fangerlaw.com
gdavidson@fangerlaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiffs demand a trial by jury in this action.

FANGER & DAVIDSON LLC

JEFFREY J. FANGER, Esq.
GERRY DAVIDSON, Esq.
*Attorneys for Plaintiff*

EXHIBIT
I

breton

| DOCUMENT DESCRIPTION | DOCUMENT NUMBER | DOCUMENT DATE |
|---|---|---|
| **Invoice** | **1018004742** | **06.07.2018** |

| CUSTOMER CODE | VAT NUMBER | CURR. |
|---|---|---|
| 130342 | | USD |

DELIVERY WAY

**FIRENZA STONE**
**36420 BILTMORE PLACE, SUITE 4,**
**WILLOUGHBY OH  44094**
**USA**

DELIVERY TERMS
CIP EASTLAKE, OHIO, USA

DELIVERY ADDRESS (IF DIFFERENT)
FIRENZA STONE
33205 CURTIS BLVD
44095 EASTLAKE (OH) - USA

PAYMENT
USD 55.245,00 ALREADY PAID BY BANK TRASNFER
USD 471.639,00 BY BANK TRASNFER BEFORE THE SHIPMENT OF THE GOODS
USD 27.624,00 BY BANK TRANSFER UPON SIGNATURE OF ACCEPTANCE CERTIFICATE

OUR BANK DETAILS:
UBI BANCA S.P.A.
IBAN: IT 51 X 03111 61560 000000010506 - SWIFT-BIC: BLOPIT22

| ITEM CODE | DESCRIPTION | UN | QUANTITY | UNIT PRICE | AMOUNT | VAT.PRO |
|---|---|---|---|---|---|---|
| | OUR ORDER 589887 | | | | | |
| | CONTRACT DATED FEBRUARY 6TH, 2018 FOR THE SUPPLY OF NR. 1 BRIDGE SAW WITH AXES "COMBICUT DJ/NC 550" WITH DIAMOND SAW BLADE AND WATERJET AND NR.1 CONTOURBRETON NC300K26 CNC STONE MACHINING CENTER ADDENDUM DATED FEBRUARY 9TH, 2018 FOR THE SUPPLY OF NR. 1 BARCODE READER TOTAL AMOUNT OF USD 554.508,00 | | | | | |
| | Our Order n. 589887 date 06.03.2018 | | | | | |
| | Your Order: CONTRACT DATED date 06.02.2018 | | | | | |
| SNC550J00001 | Bridge saw with 5 axes "COMBICUT Mod. DJ/NC 550" | NR | 1 | | | |
| | Complete: | | | | | |
| MD014084 | Lowered high-pressure pipe (H=3800 mm) | NR | 1 | | | |
| ULDJNC | Electrical cabinet certified by a NRTL | NR | 1 | | | |
| DJSP | Pair of lateral steel shoulders | NR | 1 | | | |
| DJKITMU | Kit of easy-wear components | NR | 1 | | | |
| SADBC | Manual barcode scanner | NR | 1 | | | |
| FOTO2035MA00 | System to acquire the slab image (on the machine) | NR | 1 | | | |
| SWTOUCHDJOFF | "Breton Touch Combicut Office" software licence | NR | 1 | | | |
| NC30000015 | CNC stone centre "Contourbreton Mod. NC300 K26" | NR | 1 | | | |
| | Complete: | | | | | |
| ULWP260 | Electrical cabinet certified by a NRTL | NR | 1 | | | |
| WPGLLPUA00 | Laser reader | NR | 1 | | | |
| NCHSKMP | Tool-holder for profiling wheels (1717-4550) | NR | 35 | | | |
| NCHSKFF | Tool-holder for millers and drill bits (1717-4500) | NR | 11 | | | |
| NCHSKMS | Tool-holder for stubbing wheels (1717-4400) | NR | 1 | | | |
| WP4AMBA00 | 4th "C" axis capability | NR | 1 | | | |
| 1LPVNCB00 | Single laser projector | NR | 1 | | | |

| NET KG | GROSS KG | PACKAGES | NOTE |
|---|---|---|---|

| VAT CODE | VAT DESCRIPTION | TAXABLE AMOUNT | VAT | VAT AMOUNT | TOT TAXABLE AMOUNT |
|---|---|---|---|---|---|
| | | | | | TOT VAT |
| | | | | | TOT INVOICE USD |

**Breton**

| DOCUMENT DESCRIPTION | DOCUMENT NUMBER | DOCUMENT DATE |
|---|---|---|
| **Invoice** | **1018004742** | **06.07.2018** |

| CUSTOMER CODE | VAT NUMBER | CURR. |
|---|---|---|
| 130342 | | USD |

DELIVERY WAY

DELIVERY TERMS
**CIP EASTLAKE, OHIO, USA**

DELIVERY ADDRESS (IF DIFFERENT)
FIRENZA STONE
33205 CURTIS BLVD
44095 EASTLAKE (OH) - USA

FIRENZA STONE
36420 BILTMORE PLACE, SUITE 4,
WILLOUGHBY OH 44094
USA

PAYMENT
USD 55,245.00 ALREADY PAID BY BANK TRASNFER
USD 471,639.00 BY BANK TRASNFER BEFORE THE SHIPMENT OF THE GOODS
USD 27,624.00 BY BANK TRANSFER UPON SIGNATURE OF ACCEPTANCE CERTIFICATE

OUR BANK DETAILS:
UBI BANCA S.P.A.
IBAN: IT 51 X 03111 61560 000000010506 - SWIFT-BIC: BLOPIT22

| ITEM CODE | DESCRIPTION | UN | QUANTITY | UNIT PRICE | AMOUNT | VAT% |
|---|---|---|---|---|---|---|
| KITTL90MAN1T | Kit for machining a sink hole | NR | 1 | | | |
| MAGMOLE8 | 8-cell magazine for polishing wheel automatic change | NR | 1 | | | |
| NCAMM | Magnetic wheel holder | NR | 7 | | | |
| NCAMD | Magnetic saw blade holder | NR | 1 | | | |
| SETVBDE150 | Set of Breton-branded double-acting vacuum cups | NR | 1 | | | |
| MD014291 | "BretonSmartCam Countertops" software | NR | 1 | | | |
| XPRESS00001 | XpressTop software Mod. SALES | NR | 1 | | | |
| MD014240 | Accounting software interface | NR | 1 | | | |
| XPRESS00003 | XpressTop software Mod. INVENTORY | NR | 1 | | | |
| MD014166 | Tilted support surface | NR | 1 | | | |
| | TOTAL GOODS AMOUNT | | | | 554,508.00 | |

GOODS OF ITALIAN ORIGIN DESTINED TO EXPORT TRADE

WE CONFIRM THAT THE WOOD PACKAGING MATERIAL
USED BY US DESTINED TO BE EXPORTED IS TOTALLY
FREE OF LIVING INSECTS IN ACCORDANCE WITH ISPM 15
RULES AND IS MARKED H.T. AND ALL OTHER MARKS
SUBJECTED TO APPROVED MEASURE.

Si dichiara che i prodotti descritti nella presente fattura non sono
soggetti al regime dei divieti all'esportazione nè a quello dei
prodotti a duplice uso.

Importer no. 015201-00928
Continuous Bond no. 9912CK981
CUSTOME CODE: 84.64.90.00.00

SHIPPING MARKS:
1/../BRETON/FIRENZA STONE

| NET KG | GROSS KG | PACKAGES | NOTE |
|---|---|---|---|

| VAT CODE | VAT DESCRIPTION | TAXABLE AMOUNT | VAT | VAT AMOUNT | TOT TAXABLE AMOUNT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | TOT VAT |
| | | | | | TOT INVOICE USD |

breton

| DOCUMENT DESCRIPTION | | DOCUMENT NUMBER | DOCUMENT DATE |
|---|---|---|---|
| **Invoice** | | 1018004742 | 06.07.2018 |

| CUSTOMER CODE | VAT NUMBER | | CURR. |
|---|---|---|---|
| 130342 | | | USD |

DELIVERY WAY

DELIVERY TERMS
CIP EASTLAKE, OHIO, USA

DELIVERY ADDRESS (IF DIFFERENT)
FIRENZA STONE
33205 CURTIS BLVD
44095 EASTLAKE (OH) – USA

FIRENZA STONE
36420 BILTMORE PLACE, SUITE 4,
WILLOUGHBY OH  44094
USA

PAYMENT
USD 55,245.00 ALREADY PAID BY BANK TRASNFER
USD 471,639.00 BY BANK TRASNFER BEFORE THE SHIPMENT OF THE GOODS
USD 27,624.00 BY BANK TRANSFER UPON SIGNATURE OF ACCEPTANCE CERTIFICATE

OUR BANK DETAILS:
UBI BANCA S.P.A.
IBAN: IT 51 X 03111 61560 000000010506 - SWIFT-BIC: BLOPIT22

| ITEM CODE | DESCRIPTION | UN | QUANTITY | UNIT PRICE | AMOUNT | VAT/IP.O |
|---|---|---|---|---|---|---|
| | 36420 BILTMORE PLACE, SUITE 4<br>US - 44094 WILLOUGHBY | | | | | |

| NET KG | GROSS KG | PACKAGES | NOTE | | | | |
|---|---|---|---|---|---|---|---|

| VAT CODE | VAT DESCRIPTION | TAXABLE AMOUNT | VAT | VAT AMOUNT | TOT.TAXABLE AMOUNT |
|---|---|---|---|---|---|
| O6 | NON-TAXABLE AS PER ART.8 EXPORT | 554.508,00 | 0 | | 554.508,00 |
| | | | | TOT VAT | 0,00 |
| | | | | TOT INVOICE USD | 554.508,00 |





PLAINTIFF'S
EXHIBIT
2

# ACCEPTANCE CERTIFICATE

Contract dated on February 6th, 2018

Our reference: 588837

CUSTOMER: FIRENZA STONE
36420 Biltmore Place, Suite 4,
Willoughby oh 44094
USA

OBJECT OF THE TEST: NR. 1 CONTOURBRETON NC300K26 CNC STONE MACHINING CENTER

TESTING CONDITIONS FORESEEN IN THE CONTRACT:

Installation, Start-up and training: shall be provide: 1 assistance in connection with the installation of Breton Product; 2 start-up and operating tests; 3 training to Buyer's staff.

TESTING ATTESTATION :

We certify that the Machine concerned in this "ACCEPTANCE CERTIFICATE" has been tested according to the testing conditions foreseen in the Contract.
By signing this "ACCEPTANCE CERTIFICATE" the Customer releases any possible pending amount due to BRETON SPA and authorizes his Bank to perform the payment.

| ON BEHALF OF BRETON S.P.A.: | CUSTOMER'S APPROVAL: |
|---|---|
| DATE: 10/23/48 | DATE: 10/23/48 |
| Signature: | Signature: |

Breton S.p.A.
Via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7591 - Fax +39 0423 755035
c.s.s. di TV 175503 - reg. Imp. di TV n.f. 01986270267 - p.i IT 01986270267
c.s. € 20.100.000 (i.v.) - Società soggetta ad attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it

**breton**

## ACCEPTANCE CERTIFICATE

Contract dated on February 6°, 2018

Our reference: 589887

CUSTOMER: FIRENZA STONE
  38420 Biltmore Place, Suite 4
  Willoughby oh 44094
  USA

OBJECT OF THE TEST: NR. 1 BRIDGE SAW WITH AXES "CMBICUT DJINC 550" WITH
DIAMOND SAW BLADE AND WATERJET

### TESTING CONDITIONS FORESEEN IN THE CONTRACT

Installation, Start-up and training: shall be provide; 1 assistance in connection with the
installation of Breton Product; 2 start-up and operating tests; 3 training to Buyer's staff

### TESTING ATTESTATION

We certify that the Machine concerned in this "ACCEPTANCE CERTIFICATE" has been
tested according to the testing conditions foreseen in the Contract
By signing this "ACCEPTANCE CERTIFICATE" the Customer releases any possible
pending amount due to BRETON SPA and authorizes his Bank to perform the payment

| ON BEHALF OF BRETON S.P.A.: | CUSTOMER'S APPROVAL: |
|---|---|
| DATE: 10-25-18 | DATE: 10/25/18 |
| Signature: | Signature: |

Breton S.p.A.
via Garibaldi 27, 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 749660
P.IVA di TV 03524780265 - Reg. Imp. di TV n. 03524780265 - cap. FF 01546780247
c.c.a.a. 304000/96/96 - c. Società soggetta all'attività di direzione e coordinamento società Breton S.p.a.
www.breton.it - web@breton.it

 



To The Kind Attention of:
**Mr. Anthony Fimiani**
**Firenza Stone**
36420 Biltmore Place, Suite 4
Willoughby, OH  44094
dfimiani@firenzastone.com
+1 (216) 469-7041

## FINAL CONTRACT FABSHOP CONSISTING OF
## BRIDGE SAW WITH 5 AXES "COMBICUT DJ/NC 550"
## WITH DIAMOND SAW BLADE AND WATERJET
## & CONTOURBRETON NC300K26 CNC STONE MACHINING CENTER



BY SIGNING THIS CONTRACT PROPOSAL, INCLUDING EACH AND EVERY ATTACHMENT HERETO, BUYER AGREES TO
THE TERMS AND CONDITIONS CONTAINED IN SAID CONTRACT PROPOSAL FOR THE PURCHASE OF THE GOODS WHICH
ARE SPECIFICALLY DESCRIBED HEREIN.

Our Ref:  31

Castello di Godego (Italy), February 2, 2018

Signatures for order confirmation:

BUYER                                              SELLER

X _____              X _____
Mr. Anthony Fimiani                        Mr. Gerry Vander Bas, Signature of employee
Authorized Signer                          or agent of Seller as receipt of order


                                           X _____
                                           Signature of Seller as acceptance of the order
                                           by a legal representative of the Seller

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01680270267 - p.i. IT 01680270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it

1/25



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

## PRICE OF SUPPLY

| Code | Qty | Description | Total price USD |
|---|---|---|---|
| SNC550J00001 | 1 | COMBICUT DJ/NC 550 | |
| MD014084 | 1 | Lowered high-pressure pipe | |
| SWTOUCHDJOFF | 1 | Breton Multitouch Software for Office PC | |
| ULDJNC | 1 | Electrical cabinet certified by a NRTL | |
| DJSP | 1 | Steel Shoulders in Lieu of Client Supplied Concrete | |
| DJKITMU | 1 | Kit of Easy Wearing Pieces | |
| FOTO2035MA00 | 1 | Fotocamera onboard machine | |

## INCLUDED

| |
|---|
| 22 working days for installation, start-up and training to Buyer's staff +2 day return trip (flight not included) |
| Travelling + board and lodging expenses for Seller's technician |
| 12-month all-inclusive guarantee |
| Freight - CIP delivery (clearance  included) |

| | |
|---|---|
| Last and Final Price based on package with NC300825 | $381,000.00 |
| Calculated at Eur*1.28 exchange | |

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175699 - reg. imp. di TV c.f. 01580270267 - p.i. IT 01580270267
c.s. € 20,000,000.00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

| PRICE OF SUPPLY for the Contourbreton NC 300K26 | | | |
|---|---|---|---|
| Code | Qty | Description | Total price USD |
| NC30000015 | 1 | "Contourbreton NC 300K26" | |
| MD014291 | 1 | Breton Smartcam Countertops | |
| ULWP260 | 1 | UL cabinet for US/CAN installation | |
| WPGLLPUA00 | 1 | Laser reader to check tool profile, diameter and length | |
| NCHSKMP | 35 | Tool-holders for profiling wheels | |
| NCHSKFF | 11 | Tool-holders for millers and drill bits | |
| NCHSKMS | 1 | Tool-holder for stubbing wheels | |
| WP4AMBA00 | 1 | 4th "C" axis capability | |
| 1LPVNCB00 | 1 | System to project on the work bench | |
| SETVBDE150 | 1 | Set of double-acting Blick-branded vacuum cups (H=150 mm), | |
| KITTL90MAN1T | 1 | "Zero radius" Kit | |
| MAGMOLE8 | 1 | 8-cell magazine (for KITTL90MAN) | |
| NCAMD | 1 | Magnetic saw blade-holders | |
| NCAMM | 7 | Magnetic wheel-holders | |
| INCLUDED | | | |
| 12.5 working days for installation, start-up and training to Buyer's staff +2 extra days training & Expenses. (flight not included) | | | |
| Travelling + board and lodging expenses for Seller's technician | | | |
| 12-month all-inclusive guarantee | | | |
| Freight - CIF delivery (clearance included) | | | |
| Special Price to Firenza @ Euro Exchange ≤1.25 | | | $250,765.00 |

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
n.e.a. di TV 175669 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20,000,000.00 i.v. – Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



breton usa                                                                                                    breton

Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

## Qty. 1 BRIDGE SAW WITH 5 AXES "COMBICUT D3/NC 550" WITH DIAMOND SAW BLADE AND WATERJET



Numerical control machine with 5 controlled axes, specially engineered to execute vertical or rectilinear inclined cuts with the saw blade, and vertical or inclined rectilinear and/or curvilinear cuts with the waterjet without a break. Ideal for processing slabs of natural stone, engineered stone and ceramic (even ultra thin slabs), this machine ensures waste minimization. It is possible to alternate the diamond saw blade and the Waterjet cutting system at will, according to the cutting program. It is not possible to carry out saw blade/waterjet combined inclined cuts.

Conforming to the 2006/42/CE Machinery Directive

**Code: SNC550J00001**

### Distinctive Features

- possibility of performing curvilinear cuts using the water jet;
- rapid movements of the axes;
- user-friendly programming with Windows OS;
- 19-inch colour touch-screen with Windows interface;
- Siemens 840SL hardware and CNC components;
- "KMT/Waterjet Systems" water jet pump system (formerly "INGERSOLL/RAND Waterjet").

### Major Components

**Two (2) lateral steel guides**, lubricated and protected by bellows, for the sliding of the spindle-holding beam; guides are to be fixed to the two lateral wing walls (to be provided and paid by the customer).

**Spindle-holding beam** inside which are housed the recirculating ball guides for the spindle-holding carriage sliding, suitably lubricated and protected by bellows. The movement of the beam ("Y" axis) along the runways is on rolling components; the beam is actuated by a gantry rack and pinion assembly, which is mechanically synchronized and driven by a digital brushless motor.

**Cast iron carriage** sliding along the beam on preloaded recirculating ball runners ("X" axis) through a rack and pinion assembly, driven by a digital brushless motor. The spindle-holding structure ("Z" axis),

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175809 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



*Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018*

powered by ball screw / preloaded leadscrew / digital brushless motor assembly, slides vertically inside the carriage on recirculating ball guides. The slide holding the water jet cutting head, pneumatically driven on recirculating ball guides, is fixed to the mobile structure.

**Cast-iron twist cutting head** provided with "C" axis rotation of 380 degrees and driven by a digital brushless motor. The saw blade is directly keyed to the head. The inclination of the cutting head ("A" axis) is motorized and programmable from 0 to 58 degrees.

**Motorized inclination of the cutting heads** (saw blade and waterjet nozzle) from 0 to +58 degrees in order to execute inclined rectilinear cuts with the saw blade and inclined rectilinear and/or curvilinear cuts with the waterjet without a break.

If the inclined cut is executed with waterjet directed *inwards*, it is possible to cut the largest possible slab (3.650x2.150 mm).

If the inclined cut is executed with waterjet directed *outwards*, it is possible to cut a slab sizing up to 3.400x1.900 mm.

**18 kW motor/spindle** with electrical drive controlling the saw blade rotation speed.

**Guard for saw blade with max. diameter of 550 mm.** If cuts are to be executed using the saw blade combined with the water jet, the max. diameter of the disk is 460 mm.

**Waterjet cutting system** composed of a pump supplying water with extra high pressure, an external tank for the abrasive, a system to convey and measure out the abrasive flow, a cutting head provided with system to mix water and abrasive, one diamond orifice and focusing nozzle, a tool kit for pump maintenance.

*The whole set is supplied by KMT/Waterjet Systems who will also provide the buyer/user with the international guarantee service on the water jet cutting system according to the terms specified hereunder.*

**Tank containing the water and garnet sand for the waterjet;** a worktop consisting of "gradually deteriorating" blades for supporting the slab currently being processed is installed on the upper edge of the tank. Blades have a plastic support so that it is possible to cut the slabs using also the saw blade.

**Automatic centralized lubrication** of the gear boxes and other moving parts of the machine.

**Continuous beam laser** for cut alignment.

**Touch probe sensing the slab thickness.**

**Inverter** for the stepless variation of the saw blade motor rotation speed.

**Front folding protections** with 2+2 openable doors. They are made of heat-moulded ABS polymer with sound-deadening foam and reinforced by an internal steel structure (conforming to the CE standards).

**Siemens 840SL computer numerical control (CNC).**

**Breton MultiTouch software**

The operational and management software uses the Windows environment to its full potential, is user-friendly and enables to add advanced CAD/CAM programming systems to the machine control unit. It is possible to store the technological parameters according to the materials to be machined and their thickness. The software includes the following Apps:

* *"Slab Editor"* is the App that, controlling the digital camera installed on the machine, enables to acquire the slab image and draw its perimeter and defects by simply finger touching them on the multi-touch monitor;
* the *"Cut Scheme"* App arranges the cutting scheme in the best possible way either through the automatic nesting or manually entering with a simple finger touch the pieces which can be moved, rotated or coupled with other pieces thanks to the automatic snap;
* the *"Cut Move Editor"* App calculates the cutting sequence and the different handling operations needed for its execution;
* with the *"Shape Editor"* App it's finally possible to draw using just a finger;
* *"Slab Selector"* is an intuitive and rapid App for managing the slab database;
* *"DB Orders"* is the App for managing the order database;
* *"Nesting System"* is the App for managing the automatic nesting of imported DXF files.

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01886270287 - p.i. IT 01886270287
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

Each App is provided with a Multimedia Help assisting the user in a practical and efficient way. Breton MultiTouch makes it possible to program the machining operations straight away, simply and intuitively, and is installed on the machine, in a control panel with 19-inch multi-touch colour monitor.
**Cabinet** housing all the machine electric and electronic controls.

### ENERGY SAVING
The machine is provided with the "Energy Management" functional capability that transfers the energy generated during the braking stage to the electrical grid.
The special drives used allow achieving the internal energy balance according to which the energy generated by a motor during braking can be used by another motor under acceleration.

### BRETON TELESERVICE
An Internet connection is required in order to ensure an effective technical support in case of need.

| Technical Specifications | | | | | |
|---|---|---|---|---|---|
| Worktop length | | mm | 3,650 | in | 143.7 |
| Worktop width | | mm | 2,150 | in | 84.6 |
| Load capacity of the work bench | | kg | 1,000 | lbs | 2,404 |
| Maximum workable thickness using the 550 mm Ø saw blade | | mm | 140 | in | 5.5 |
| Maximum workable thickness using the 400 mm Ø saw blade | | mm | 65 | in | 5.6 |
| Maximum workable thickness using the water jet | | mm | 140 | in | 5.5 |
| Maximum workable thickness (with worktop change) | | mm | 50 | in | 1.9 |
| Diameter of blade-holding flanges | | mm | 248 | in | 9.8 |
| Diameter of usable saw blades | | mm | 300÷550 | in | 11.8÷21.7 |
| Maximum Ø of the saw blade combined with the water jet | | mm | 400 | in | 15.7 |
| "A" axis rotation | | degrees | 0÷58 | | |
| "C" axis rotation (saw blade) | | degrees | 380 | | |
| Saw blade rotation speed | | rpm | 700÷2,800 | | |
| Spindle motor power | | kW | 18 | hp | 24 |
| Water jet pump motor power | | kW | 37 | hp | 50 |
| Water jet pump capacity | | l/min | 3.76 | gpm | 1 |
| Water jet maximum pressure | | bar | 3,800 | | |
| Capacity of the external tank for the abrasive | | litres | 200 | gal | 52.8 |
| "X" axis displacement speed | | mm/min | 40,000 | ipm | 1,574 |
| "Y" axis displacement speed | | mm/min | 40,000 | ipm | 1,574 |
| "Z" axis displacement speed | | mm/min | 10,000 | ipm | 394 |
| "C" axes rotation speed | | rpm | 10 | | |
| Overall dimensions | (length) | mm | 5,050 | in | 198.5 |
| | (width) | mm | 8,000 | in | 314.9 |
| | (height) | mm | 5,500 | in | 216.5 |

Cont'd

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e a. di TV 175699 - reg. imp. di TV c.f 01880270287 - p.i. IT 01880270287
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it




Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

| Overall dimensions of water jet pump | (length) | mm | 2,200 | in | 86.6 |
| | (width) | mm | 1,000 | in | 39.3 |
| | (height) | mm | 1,200 | in | 47.2 |
| Min/maximum room temperature | | °C | 5-32 | | |
| Sound pressure level | | dB | < 85 | | |
| Machine mass | | kg | approximate 8,000 | lbs | 17,637 |

### SPECIFICATIONS OF THE WATER USABLE BY THE WATERJET

In order to operate properly and be covered by the producer's guarantee, the water jet cutting unit must be fed with water whose characteristics fall within the following parameters:

| Water parameters | | Maximum acceptable | Medium | Minimum acceptable |
|---|---|---|---|---|
| β alkalinity | (mg/l) | 50 | 25 | 10 |
| Calcium | (mg/l) | 50 | 5 | 0,5 |
| Carbon Dioxide | (mg/l) | 0 | 0 | 0 |
| Chloride as Cl | (mg/l) | 15 | 1 | 0,1 |
| Free Chlorine | (mg/l) | 0,05 | 0,05 | 0,05 |
| Iron as Fe | (mg/l) | 0,2 | 0,1 | 0,01 |
| Manganese as Mn | (mg/l) | 0,1 | 0,1 | 0,1 |
| Magnesium as Mg | (mg/l) | 0,5 | 0,1 | 0,1 |
| Nitrate | (mg/l) | 25 | 25 | 10 |
| Oxygen | (mg/l) | 2 | 1 | 0,1 |
| pH value | | 6,5-8,5 | 6,5-8,5 | 6,5-8,5 |
| Silica | (mg/l) | 15 | 10 | 1 |
| Sodium | (mg/l) | 50 | 10 | 1 |
| Sulphate | (mg/l) | 25 | 25 | 1 |
| Total dissolved solids | (mg/l) | 200 | 100 | 25 (*) |
| Electrical Conductivity | [μS/cm] | 290 | 145 | 45 (*) |
| Total hardness as CaCO3 | (mg/l) | 25 | 15 | 1 |
| Turbidity | (NTU) | 5 | 5 | 1 |
| Water temperature | (degrees) | 21 | | 12,7 |

(*) The value must not be beyond this amount, otherwise water becomes too "aggressive".

If water does not fall within the above parameters, the buyer/user shall provide for a suitable water treating, softening and filtering system. Should this system be installed, the water composition must be calibrated according to the average value. Before the machine start-up, the buyer/user shall deliver to the supplier the test certificate of the water feeding the pump attesting that the above data are observed.

**The usage of water not complying with the data specified hereinbefore nullifies the guarantee covering the water jet cutting unit.**

### KMT GUARANTEE

*KMT/Waterjet Systems, replacing BRETON SpA, will directly provide the buyer/user with the international guarantee service on the water jet cutting system according to the terms specified hereunder. In any case, the job request must be sent to Breton S.p.A. (Breton USA for North America) who will promptly coordinate the job of KMT/Waterjet Systems.*

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270287 - p.i. IT 01880270287
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it

 

Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

KMT guarantees that its machines and equipment are free from any material or processing fault and defect which make them unsuitable for the use to which they are destined, for a period of 12 months as from the date of installation or 15 months as from the date of notice of goods ready to be shipped or 2,000 working hours.

The guarantee expires automatically when one of the three conditions specified hereinbefore is accomplished. During the guarantee period, KMT undertakes to remove the manifest material and/or processing faults and defects; this on condition that machine or equipment has been properly used according to the operating, service and performance directions of the seller and that the start-up certificate signed by the seller and buyer has been submitted. The defective parts covered by this guarantee are repaired or replaced free-of-charge by KMT. The labour costs relevant to KMT technicians by the buyer to remove the defects covered by guarantee shall be paid by KMT, save the defect can be easily repaired by the buyer on the spot. This undertaking of KMT excludes any other effect of the guarantee provided by law. All the tools and consumables subject to wear are not covered by the guarantee.

For the manufacture of his machines, KMT uses materials, components and mechanisms that, at his unquestionable judgement, it deems suitable as to type, status and quality. Even after the order has been received, KMT still has the right to modify its machines and equipment in such a manner that his best judgement deems appropriate to improve them and this does not entitle the buyer to cancel the order.

**Note:** The supply includes:

1 diamond orifice as standard outfit
2 focusing nozzles
× technical specifications for local purchase of the "gradually deteriorating" blades for the worktop
◦ 100 metres of "gradually deteriorating" plastic supports needed when cutting with the saw blade
× technical specifications for local purchase of the "gradually deteriorating" plastic supports

**Note:** The supply does not include:

× tools and various consumables which are not mentioned hereinbefore
× water treating, softening and filtering system
◦ system to collect the cutting waste from the tank and treat it

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175809 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

| **Accessories Included** |
|---|

**Qty. 1 Lowered high-pressure pipe** for a max height of 3.800 mm.
**Code: MD014084**

**Qty. 1 "Breton Touch COMBICUT Office" software licence** to be installed on a PC of the customer. Networked with the machine through Ethernet technology, this software enables the drawing, the import of pieces from DXF format, the automatic optimization of the piece positioning inside the slabs to be processed (which are sensed by the operator using the "FOTO2035" accessory, not included in the price) and the realization of the relevant production programs.
Minimum requirements of the system: 64-bit Windows 7, i5 processor or processor delivering superior performance.
The supply includes nr. 0,5 days for installation (the training is not included since it is carried out during the machine start-up and training).
**Code: SWTOUCHDJOFF**

**Qty. 1 Electrical cabinet certified by a NRTL** (Nationally Recognized Testing Laboratory) for the US and Canadian markets.
**Code: ULDJNC**

**Qty. 1 Pair of lateral steel shoulders** for the sliding of the spindle-holding beam, replacing the concrete walls (for machine without foundations).
**NOTE:** This solution involves the construction of a concrete slab (including slopes for water collection, cable ducts and support basement suitable for anchoring both the shoulders and the table) to be built according to Breton's specifications.
**Code: DJSP**

**Qty. 1 Kit of easy-wear components** for the cutting head and pressure intensifier of the "Combicut" machine.
**Code: DJKITMU**

**Qty. 1 System with digital camera to acquire the slab image (installed on the machine)**
The system takes a photo of the slab placed on the machine work bench; it includes hardware and software to acquire the slab image which is displayed on the colour touch-screen. The operator marks the slab outline and the contour of any possible surface defect with the mouse. So defined profile and defects will be the base for both the optimization of the slab and the programming of cuts. The digital camera is installed on a special independent support, positioned in the area of the machine.
**NOTE:** In order to create the ideal environment for taking digital photographs, the arrangement of the correct light intensity in the area of the camera and the removal of any possible luminous interference as well as of all patches of shade and environmental reflections, shall be at the customer's care and expense.
**Code: FOTO2035MA00**

 

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godega (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01886270287 - p.i. IT 01886270287
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it




Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

## CNC STONE CENTRE "CONTOURBRETON NC 300K26"
## WITH MOBILE BRIDGE, LARGE WORK BENCH AND THREE INTERPOLATED AXES



Numerical control machining centre with 3 interpolated axes and large work bench, specially engineered to shape, contour, mill and drill items of granite, marble, engineered stone and suchlike.

**Code: NC30000015**

### Major Components

**Metalquartz work bench**, suitable for using double-acting suction cups.

**Basement and arc-welded steel lateral shoulders** for the bridge sliding, inside which are housed the guides mounted on recirculating ball runners and protected by bellows. The machine is provided with a tank for wastewater collection and channelling.

**Arc-welded steel bridge** housing the ground recirculating ball guides, protected by bellows, for the spindle-holding carriage sliding. The bridge movement ("Y" axis) is by means of two digital brushless motors coupled with two zero-clearance reduction gears.

**Spindle-holding carriage and ram** made of iron casting. The carriage slides on recirculating ball runners ("X" axis) by means of a brushless motor. The spindle-holding ram ("Z" axis) slides vertically inside the carriage on recirculating ball runners, driven by a ball screw/preloaded leadscrew assembly, which is powered by a digital brushless motor.

**Electrospindle with HSK-B80 tool-holder**, cooled by a liquid ring closed circuit and provided with a middle duct to let the tool cooling water and taper cleaning air pass through.

**34-cell automatic tool magazine** composed of two opposed, linear and lateral 17-cell tool magazines.

**Front folding protections** with 2+2 openable doors. They are made of heat-moulded ABS polymer with sound-deadening foam and reinforced by an internal steel structure.

**Vacuum plant.**

**Automatic centralized lubrication system.**

**Siemens 840SL computer numerical control (CNC)** capable of interpolating several axes with optimization of the paths. If the machine is provided with the accessory for spindle inclination, the CNC is supplied with a device controlling the current drawn by the spindle when polishing inclined tops.

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

**Control panel** with monitor and keyboard to enter the data in the CNC and including all the controls required to manage both the machine and its accessories. The panel can be rotated with respect to the workplace.

**Auxiliary hand-held push-button panel**, which is cable-linked to the major control panel and duplicates its main controls (axes + handwheel control, emergency stop).

**Electrical cabinet** including air conditioner and inside lighting.

## ENERGY SAVING

The machine is provided with the "Energy Management" functional capability that transfers the energy generated during the braking stage to the electrical grid.

The special drives used allow achieving the internal energy balance according to which the energy generated by a motor during braking can be used by another motor under acceleration.

## BRETON TELESERVICE

An Internet connection is required in order to ensure an effective technical support in case of need.

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01860270267 - p.i. IT 01860270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it




Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

| Technical Specifications | | | | |
|---|---|---|---|---|
| Work bench dimensions | mm | 3.740x2.240 | in | 147.2x88.1 |
| Tool max. diameter | mm | 140 | in | 5.5 |
| Max. diameter of tools arranged in a sequence | mm | 125 | in | 4.9 |
| Tool max. length | mm | 240 | in | 9.5 |
| Tool-holder | type | HSK-B80 | type | HSK-B80 |
| Capacity of the linear tool magazine | nr. | 17+17 | Nr. | 17+17 |
| Spindle motor power (in S1 duty) | kW | 16 | hp | 21 |
| Spindle max. rotation speed | rpm | 14.500 | rpm | 14,500 |
| "X" axis useful working travel | mm | 3.800 | in | 149.6 |
| "Y" axis useful working travel | mm | 2.300 | in | 90.5 |
| "Z" axis useful working travel | mm | 300 | in | 11.8 |
| "X" axis displacement speed | mm/min | 50.000 | ipm | 1,968 |
| "Y" axis displacement speed | mm/min | 50.000 | ipm | 1,968 |
| "Z" axis displacement speed | mm/min | 20.000 | ipm | 787 |
| Overall dimensions (length) | mm | 6.700 | in | 263.8 |
| (width) | mm | 3.950 | in | 155.5 |
| (height) | mm | 2.550 | in | 100.4 |
| Average sound pressure level | dB | 75 | | |
| Machine mass | kg | approx.8.000 | lbs | 17,636 |

Breton S.p A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175809 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



breton

Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

## Accessories Included

Qty. 1 **"BretonSmartCam Countertops" software**, CAD/CAM software for countertop production on CNC stone centres.
The CAM module enables to execute the following processing:
- Cutting of disk
- Contouring, profiling, drilling, milling and hollowing out by means of milling or shaping tools
- Polishing of tops or of tilted tops
- Slot milling and polishing even on tilted tops
- 3D engraving of Windows True Type characters on flat horizontal or vertical surfaces
- Tool path automatic calculation based on a preset technology table
- Fast modification of tool path entries and exits

The CAD module enables to:
- Realise bi-dimension engineered drawings
- Capture DXF and DWG format drawings coming from external CAD or from template detectors
- Place vacuum cups on the worktop
- Interface with the laser projector software placing vacuum cups on the worktop

The 3D SOLID SIMULATION module enables to:
- Verify possible tool-workplece and tool-machine collisions

The software works in Windows environment, it is user-friendly and easy to use.
The supply includes 2 days of training.
**NOTE:** the software functions may be limited by the technical and functional characteristics of the machine.
**Code: MD014291**

Qty. 1 **Electrical cabinet certified by a NRTL** (Nationally Recognized Testing Laboratory) for the US and Canadian markets.
**Code: ULWP260**

Qty. 1 **Laser reader to check the profile, diameter and length of the tool**, complete with software and installed on a corner of the work bench ("Contourbreton") or on a shoulder of the machine ("Shapemill").
**Note:** When installed on a "Contourbreton", this unit reduces the work area next to the laser by a triangle of 150x150 mm.
**Code: WPGLLPUA00**



Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20,000,000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigap S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

Qty. 35 **HSK-880 DIN 69893/2 tool-holders** for profiling wheels (1717-4550).
**Code: NCHSKMP**



Qty. 11 **HSK-880 DIN 69893/2 tool-holders** for millers and drill bits (1717-4500).
**Code: NCHSKFF**



Qty. 1 **HSK-880 DIN 69893/2 tool-holder** for stubbing wheels (1717-4400).
**Code: NCHSKMS**



Qty. 1 **4th "C" axis capability** enabling the usage of cutting, milling and polishing units.
**Code: WP4AMBA00**

Qty. 1 **System to project the arrangement of the templates of the pieces to be machined and the relevant locking vacuum cups on the work bench**
The system includes:
1  red-light laser projector, prearranged to be fixed to a special support structure, over the machine work bench
1  structure made of painted steel structural work, to support the laser projector
1  software to control the projector, fully integrated with the machine interface and including the control of the barcode reader
**Code: 1LPVNCB00**



Qty. 1 **Set of Blick-branded double-acting vacuum cups** (H=150 mm), composed of:
  • n. 4  rectangular vacuum cups of 150x150 mm
  • n. 6  rectangular vacuum cups of 75x300 mm
  • n. 6  rectangular vacuum cups of 150x300 mm
  • n. 2  rectangular vacuum cups of 40x100x300 mm
**Code: SETVBDE150**

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

Qty. 1  **Kit to machine a sink hole** with 90 degree sharp corner and polished internal edge, with manual tool change (wheels and saw blade)
Mainly composed of:
* 90 degree head with magnetic coupling
* expansion of the "BretonSmartCam" software with macro dedicated to this specific type of machining

It is necessary to purchase the "4ᵗʰ C-axis" accessory.
The magnetic wheel and saw blade holders are not included.
**Note:** For Contourbreton QUARTZ, NC 300 and DUAL: when installed on the tool magazine in order to be used automatically, the head occupies 2 cells.
**Code: KITTL90MAN1T**



Qty. 1  **8-cell magazine** with protection guard that can be pneumatically opened enabling the automatic change of polishing wheels (see arrangement on the scheme below).
**NOTE:** On the machine NC 300, this magazine cannot be paired with the additional 20-cell magazine (code WPMAG20).
**Code: MAGMOLE8**

Qty. 1  **Magnetic saw blade-holders**.
**Code: NCAMD**

Qty. 7  **Magnetic wheel-holders**.
**Code: NCAMM**

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175909 - reg. imp. di TV c.f. 01860270267 - p.i. IT 01860270267
c.s. € 20,000,000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

---

> **Installation, Start-up and Practical Training to Buyer's Staff
> Team for After Sale Service in USA and CANADA**



BRETON USA customer service corp.
1753 NorthGate Blvd.
Sarasota FL 34234

servicemanager@bretonusa.com

941 360 2700

For The COMBICUT 21 days are included in the price of the machine for installation, start up and software training. +2 day return trip, flight not included.

For the NC300 12.5 days are included in the price of the machine for installation startup and software training +2 day return trip, flight not included.

This service is carried out by Seller' skilled technicians.

Seller will decide the number of technicians to be sent for the installation depending on the type of plant supplied; therefore, the period of this service will change accordingly.

An Internet connection is required in order to ensure an effective technical support in case of need.



**Important Note:**

We strongly recommend the customer  to fulfill the directions regarding the execution of  the foundations (cement walls or basement)  for the purchased machine (if required) at least 30 days before machine arrival in order to assure the maximum of the rigidity and stability to the cement before installation, and the feeding points for water, air and electric power at least few days prior to the machine arrival in accordance with the list of duties specified in the "Step by Step" documentation (or separate letter) sent to the Customer

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

| Notes |
|---|

(1)    If different, the descriptions and technical data specified in this offer prevail over those
appearing in the catalogues, web site and any other advertising material.

(2)    Any photographs contained in these documents are to be considered purely indicative.

(3)    Unless otherwise specified, all prices mentioned above do not include any safety barrier or sound-deadening
cabinet. Please note, however, it is compulsory for Buyer to equip machines and equipment purchased, before
starting-up the production, with safety barriers and sound-deadening cabinets conforming to the regulations in
force in the country to which the same are destined. Supplier shall not be held responsible for any direct or
indirect damage to persons or things caused by the lack of suitable safety barriers and sound-deadening
cabinets.

(4)    Blades, diamond tools, abrasives, lubricants, consumables and any item which is not expressly mentioned in
the above descriptions are not included in the price of the supply.

Electric planning and marking of the electric components installed on Breton machines and equipment: the electric
planning of both the control boards and the electrical equipment mounted on the machines is carried out according to
the "CENELEC" European standards (European Committee of Electrical Standardization). All the electric/electronic
components bear the "CE" mark.

(5) In particular The transformers who were in original offers were removed for finding that 480V was available

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270287 - p.i. IT 01880270287
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

> ### SPECIFIC TERMS AND CONDITIONS

THE SPECIFIC TERMS AND CONDITIONS AS SET FORTH HEREIN HAVE BEEN AGREED UPON BETWEEN SELLER AND BUYER, AND ARE APPLICABLE TO THIS CONTRACT PROPOSAL

1. **GOODS DELIVERY**
   The goods as specified hereinbefore will be delivered CIP "Firenza Stone, Willoughby, OH" Customs Clearance Included (Incoterms® 2010), included in the price of the Contract. Any possible demurrage, container detention or customs inspection are not included in the price of the Contract.
   The free time granted by the Shipping Company for unloading is 4 (four) hours for each means of transport. After the goods have reached the production site, Buyer shall promptly unload them from the transport means and store them in a sheltered place, away from moisture and inclement weather, so as to keep them undamaged until installation.

2. **DELIVERY TIME**
   The goods as specified hereinbefore shall be delivered in Italy to the forwarding agent within June 15, 2018 It is agreed that the delivery terms will be automatically extended in accordance with Seller's needs, in the event Buyer demands for variations of the supply during the execution of the order, or should he fail to fulfil his contractual obligations in due/agreed time, and in particular should he fail to:
   - Provide Seller with the data required for the execution of the supply in due time; Promptly grant Seller the approval of the drawings and/or schemes, where required;
   - Send any components, raw materials and whatever else to Seller as agreed

3. **PRICE AND PAYMENT TERMS**
   Payments shall be made in the currency of the Contract and shall be considered as accomplished upon full collection by Seller in his bank account of the supply amount, free from any lien or restriction. The total amount of the supply (absent additional accessories listed above) is 531,768.00 in US currency and shall be paid "IN FAVOR OF BRETON SPA as follows

   - 53,177.00 in USD funds, down payment as order confirmation, by bank transfer as from the order confirmation date. This payment Must be accompanied by an approval letter from a first class lending institution within 10 business days from the receipt of funds by the Seller.

   - 452,000.00 in USD funds by bank transfer before shipment of the goods, within five days as from the fax sent by Seller to Buyer advising that goods are ready for delivery. If the approval letter is received, this payment may be made upon US Port Arrival if a bank requirement.

   - 26,591.00 in USD by bank transfer or certified check **the sooner** of 60 days from the arrival of the machinery at the US Port of Entry, or upon signature of the buyers acceptance document.

*WIRE TRANSFER INFORMATION FOR BRETON SPA*

# UBI  BANCA S.P.A.
Treviso  branch
V. Veneto 8 24122 Bergamo, Italy
*IBAN :*      IT 51 X 03111 61560  000000010506
*SWIFT - BIC :*  BLOPIT22

   - Or by Leasing Contract:
   As earnest money and order confirmation, Buyer will pay in favour of Seller the amount of 10% within 5 days as from the date of this Contract.

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175699 - reg. imp. di TV c.f. 01860270267 - p.i. IT 01860270267
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

Within 30 days as from the date of the Contract, Buyer undertakes to have a first-rate leasing company of his choice entered into a Purchase Contract with Seller for the same goods and under the same conditions set out in this Contract.

The contract between the leasing company and Seller shall not contain any Buy-back Obligation or Undertaking, which binds Seller anyhow, nor shall it contain any other guarantee at Seller's charge.

The contract between the leasing company and Seller shall provide for the leasing company to pay the total price of the supply, less the amount already cashed by SELLER as earnest money and order confirmation, by a wire transfer payable upon production of the usual shipping documents as specified here below:

--- commercial invoices: one original and two copies;

--- packing list: one original and two copies;

--- bill of lading/bill of transportation: one original;

--- certificate of insurance against goods transportation risks for a value of 110% of the shipped goods [*in case the delivery terms and conditions agreed provide for transportation insurance to be made by Seller*]: one original and two copies;

--- signed Leasing Certificate of Installation: Buyer must provide the signed document before delivery.

The amount paid by Buyer as earnest money and order confirmation shall not be refunded in case Buyer does not fulfil his undertaking to have a first-rate leasing company entered into a Purchase Contract with Seller as set out hereof.

**Inspection:** Should the leasing company, before shipping, require the inspection of goods by the customer or any specialized, independent organization qualified for issuing the relevant "Inspection Certificate" in Italy, all related costs shall be at BUYER's charge and are not included in the Price of the Supply.

In this case, the documents required for releasing the payment may also include the relevant "Inspection Certificate"

4. <u>TAXES</u>

Unless otherwise defined and itemized on the summary of this order, and aside from duties related to shipment, the BUYER is responsible for any and all Federal, State, & Local sales or use taxes that may apply for this purchase

5 <u>ASSISTANCE TO INSTALLATION AND START-UP OF THE MACHINES AND TRAINING TO BUYER'S STAFF</u>

Seller shall carry out this service as specified in the "GENERAL STANDARD TERMS AND CONDITIONS" hereof.

The following costs, expenses and services **are included** in the price of the Contract and are to be paid and/or provided by Seller:

a) <u>Travelling expenses for Seller's technicians and for the equipment required for the installation and start-up</u>

Prepaid round-trip air-tickets for Seller's technicians and for the equipment required for installation and start-up which are not provided by Buyer (item 4.g), with departure/arrival from/to Venice airport, according to the fastest route. Seller's technicians have the right to return to their head-office once every two months.

b) <u>Board and lodging expenses for Seller's technicians</u>

Accommodations in medium-class hotels according to the "Full Board Accommodation" system, including the expenses for personal laundry and other incidental expenses (one daily phone call to their home, etc.)

c) <u>Means of transportation for Seller's technicians</u>

Means of transportation shall be put at Seller's technicians' disposal for local work transfers.

d) <u>Communications between Seller's technicians and their head-office for work purposes.</u>

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01886270267 - p.i. IT 01886270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

The following costs, expenses and services **are NOT included** in the price of the Contract and are to be paid and/or provided by Buyer:

e) <u>Buyer's staff to assist Seller's technicians</u>

Depending on what is required during the machine installation on site. Seller shall notify Buyer in advance of the number of workers required.

f) <u>Handling equipment</u>

Depending on what is required during the machine installation on site. Seller shall provide Buyer in advance with a detailed list of the equipment required.

g) <u>Equipment required for machine installation</u>

Depending on what is required during the machine installation on site. Seller shall provide Buyer in advance with a detailed list of the equipment required.

6. **<u>EXTENSION OF WARRANTY AND REDUCTION OF BUYER'S CHARGES</u>**

What provided for under Art. 7) "WARRANTY" of the "GENERAL STANDARD TERMS AND CONDITIONS" remains in force but with the following modifications: (a) warranty is extended to **12** (twelve) months as from the date on which the "Certificate of Installation, Start-up and Training Executed" is signed, and shall never exceed **18** (eighteen) months counting from Buyer's notice that goods are ready for shipment (b) Buyer's charges for interventions under warranty are restricted to customs duties for the parts delivered.

7. <u>OPERATING VOLTAGE AND WORKING DIRECTION</u>

Buyer shall confirm by fax to Seller the operating voltage (Volts and Hertz) of the installation site, and the working direction of the machines (except for machines with a standard working direction) within 10 days as from the date of this Contract. Seller could extend the agreed delivery terms unilaterally, in case of delay in providing the above information.

Breton S.p A.
via Garibaldi, 27 – 31030 Castello di Godego (TV) Italy – Tel. +39 0423 7691 – Fax +39 0423 769600
r.e.a. di TV 175609 – reg. imp. di TV c.f. 01886270287 – p.i. IT 01886270287
c.s. € 20.000.000,00 i.v. – Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it

  breton

Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

Castello di Godego, Italy — February 2, 2018

Signatures for order confirmation:

BUYER                                    SELLER

X _____          X _____
Mr. Anthony Fimiani                      Mr. Gerry Van Der Ban, Signature of employee
Authorized Signer                        or agent of Seller as receipt of order

                                         X _____
                                         Signature of Seller as acceptance of the order
                                         by a legal representative of the Seller

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20,000,000.00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it

21/25

 

Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

## GENERAL STANDARD TERMS AND CONDITIONS

SUBJECT TO THE SPECIAL CONDITIONS SET FORTH IN THE PURCHASE ORDER, THE FOLLOWING COMPREHENSIVE GENERAL STANDARD TERMS AND CONDITIONS APPLY TO THIS PURCHASE AGREEMENT CONCERNING THE SPECIFIED PRODUCTS ("BRETON PRODUCT").

1.  Orders. Orders for a Breton Product placed by a buyer (hereinafter "Buyer") with Breton S.P.A. and/or Breton USA Customer Service Corp. Inc. (hereinafter, collectively "Seller") and/or their respective official sales force (employees, official agents or resellers) are irrevocable. Any changes, integrations and/or amendments to such orders must be approved by Seller in writing. By ordering Breton Product, Buyer accepts and agrees to the terms and conditions set forth herein.

2.  Delivery Terms. Unless otherwise agreed in writing, Breton Product is delivered "FCA (FREE CARRIER, Incoterms 2000) Via Garibaldi 27 – Castello di Godego (Treviso), Italy." Breton Product, together with its components and parts, will not be crated for shipment, and will be prepared for shipment according to the customary shipping and transportation practice and standards for products such as Breton Product.

3.  Net Payment. Buyer's obligation to pay the purchase price or rent, as the case may be, and all amounts due in connection with this purchase agreement, as the case may be, of Breton Product, is absolute and unconditional and is not subject to any abatement, reduction, set-off, defense, counterclaim, interruption, deferment or recoupment for any reason whatsoever.

4.  Security Interest. In the event that Buyer pays less than the agreed upon full purchase price at the time of the purchase of Breton Product, Buyer shall grant to Seller a security interest in Breton Product so purchased and not paid in full (and also in all proceeds therefrom, including, without limitation, all proceeds which Buyer receives from an insurance carrier or any other party for or as a result of any damage to or loss of such Breton Product). Buyer hereby agrees to execute and deliver to Seller such documents, as required by Seller, to perfect Seller's security interest. Buyer hereby authorizes Seller to prepare, execute, deliver and/or file, on Buyer's behalf, any and all documents required or necessary to protect, preserve and/or enforce Seller's security interest in Breton Product.

5.  Limitation of Liability. Seller is not, and shall not be, liable, whether directly or by way of indemnity, for any damages whatsoever which might arise or be caused, as a result of, connected with, or otherwise attributable to: (a) misuse, mishandling and/or improper operation of Breton Product; (b) repairs, servicing, modifications or alterations performed by any person or entity, other than Seller or an authorized repair facility of Seller; (c) use of

Breton Product in combination with adaptors and/or equipment from other manufacturers, other than that for which such Breton Product is expressly designed, or (d) use in any manner, other than those for which such Breton Product is labeled, designed and is otherwise intended to be used.

6.  Force Majeure. The "Force Majeure" (Exemption) clause of the International Chamber of Commerce (ICC Publication N° 421) is hereby incorporated in this instrument. Should the Force Majeure last or continue for at least six (6) consecutive months, each of the parties shall have the right to terminate the contract by giving written notice to the other party by no later than ten (10) days after the expiration of the six (6) months.

7.  Warranty Policy. Breton Product is warranted to be free from defects in workmanship and materials for six (6) months from the date of delivery (the "Warranty Period"). In the event that Breton Product is defective, Seller will replace or repair, at Seller's sole discretion, the defective parts at no charge to Buyer, except that Buyer shall pay for the customs duties and the cost of shipping the replacing part from Seller's facilities to Buyer's facilities as well as for the expenses for the round trip and board and lodging of Seller's technicians who will replace or repair Breton Product at Buyer's facilities. In order to be entitled to such service, Buyer must submit Buyer's claim within the Warranty Period. THIS WARRANTY IS IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESS, IMPLIED AND/OR STATUTORY, INCLUDING, BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, FITNESS AND/OR OF SUITABILITY FOR A PARTICULAR PURPOSE, WITH RESPECT TO BRETON PRODUCT OR SERVICES, INCLUDING ANY PATENTS OR TECHNOLOGY RELATIVE THERETO. ANY AND ALL OTHER WARRANTIES, REPRESENTATIONS AND/OR GUARANTEES, OF ANY TYPE, NATURE OR EXTENT, BE IT IMPLIED OR EXPRESS AND/OR WHETHER ARISING UNDER OR AS A RESULT OF ANY STATUTE, LAW, COMMERCIAL USAGE, CUSTOM, TRADE OR OTHERWISE, ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED. Seller neither assumes, nor authorizes any person to assume for it, any other liabilities in conjunction with and/or related to the sale and/or use of Breton Product. To insure proper use, handling and care of Breton Product, Buyer must consult the applicable catalog, brochure, operating and maintenance manuals, film and other good literature supplied together with Breton Product, or which are otherwise available from Seller

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01580270267 - p.i. IT 01580270267
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Gigap S.p.a.
www.breton.it - info@breton.it



at no charge and upon request. Repairs, modifications or alterations to Breton Product, performed by any person or entity, other than by Seller or an authorized repair facility of Seller, nullifies and otherwise voids all applicable warranties offered by Seller. Buyer shall hold Seller harmless from and against all losses and liabilities resulting from any and all unauthorized alteration or modification to Breton Product. This warranty policy is only for Buyer's benefit and is not transferable or assignable by Buyer. Repair or replacement of a Breton Product shall not extend the term of any applicable warranty. The remedies provided herein are Buyer's exclusive remedies under this warranty policy. In the event that the defective or malfunctioning parts are replaceable and/or repairable by Buyer, Seller will supply the defective parts along with the instructions needed to carry out the repair or replacement. The parts which are subject to normal wear and tear, as well as the tools and instruments which might be supplied by Seller together with Breton Product are not covered by this warranty. Unless agreed in writing, any and all warranties shall be considered as forfeited if installation of Breton Product is not performed by Seller or under the control of Seller.

8. Installation; Start-Up; Training. When specifically included in this purchase Seller shall provide: (1) assistance in connection with the installation of Breton Product; (2) start-up and operating tests; (3) training to Buyer's staff. Upon completion of the installation and start-up and operating tests, Seller shall issue a Certificate of Installation. Seller shall keep and maintain a log book on which each step of the installation and start-up operations will be recorded. The log book will also be signed by Buyer at the end of each day. Upon Buyer's written request, Seller shall keep and maintain two copies of the log book (one of the copies will be for Buyer). In connection with the installation of Breton Product, provided that Seller's personnel in charge of the installation receives the necessary visa or permit to enter the U.S., Seller's personnel will be ready and available at Buyer's facilities within fifteen (15) days from the date in which Seller receives Buyer's written request for installation. Buyer's written request for installation must include Buyer's declaration that: (1) Buyer has properly installed all walls and roofing surrounding Breton Product; (2) Buyer has prepared the foundations on which Breton Product will rest, according to Seller's drawings and instructions, which will be provided to Buyer together with Breton Product; (3) Buyer has properly installed the back-filling and flooring of the area surrounding the foundations; (4) Buyer has installed the water and electric feeding lines, according to Seller's drawings and instructions, which will be provided to Buyer with Breton Product; and (5) the instructions and specifications provided by Seller have been met and that Breton Product is ready to be installed.

9. Delay in Payment; Delay in Accepting Delivery of Breton Product. In the event that Buyer fails to pay rent or other amounts payable to Seller when due, Seller shall be entitled to receive interest on the unpaid amount, or any part thereof, at the rate of 1% per month or at any other rate permitted by the laws of the jurisdiction where Breton Product is installed and used, whichever is greater. Any and all collection expenses, including reasonable attorneys' fees, which are incurred by Seller to secure and/or obtain payment of any sums due from Buyer and/or to repossess the products sold to Buyer, will be borne by Buyer. If Buyer is unable or unwilling to accept delivery of Breton Product once Seller makes Breton Product available to Buyer, and, as a result thereof, delivery is delayed beyond ninety (90) days after the delivery date, the price shall be subject to an increase of 1% per month thereafter.

10. Delivery Date. The delivery date of Breton Product provided by Seller is an estimated delivery date. If, and only if, the delivery of the product is delayed beyond ninety (90) days with respect to the estimated delivery date, and the delay is not due to or caused by Buyer or Force Majeure, Buyer shall be entitled to terminate this contract by written notice of termination to be mailed to Seller by registered mail within ten (10) days after the ninety (90) days of delay. Should Buyer not exercise the right of termination as provided herein, this contract shall remain in full force and effect and Buyer shall have no remedy for the delay. In the event that Buyer terminates this contract as provided herein, Seller will refund the amounts paid by Buyer to Seller in connection with the purchase of Breton Product the delivery of which was delayed as provided herein.

11. Acceptance of Breton Product. Buyer's acceptance of Breton Product shall be deemed to occur the earlier of (1) the execution by Buyer of a "Certificate of Acceptance" in the form provided by Seller, or (2) the thirtieth (30th) day after the date on the Certificate of Installation.

12. Performance of Obligations. In the event of Buyer's failure to perform any of the obligations with respect to the purchase of Breton Product, Seller's obligation to deliver or install Breton Product shall be excused until Buyer cures such failure. In the event of Buyer's failure and if delivery and/or installation have occurred, Seller shall be excused from performance of its obligations until Buyer's failure has been cured.

13. Operation by Qualified Personnel. Buyer hereby warrants that access to Breton Product is limited to Buyer's fully qualified and trained personnel.

14. Confidential and Proprietary Information. All technical information, whether in written or oral form, including, but not limited to, know-how, specifications, formulas, drawings, diagrams, manufacturing process and quality control standards, instructions and procedures, which Seller may disclose to Buyer, shall be received and retained by Buyer as strictly confidential and, except as provided

23 / 25

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 176609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



Cont'd offer to Firenza Stone for a CNC Fabshop Dated February 2, 2018

for herein, may not be used or disclosed to any third party (collectively and individually "Confidential Information"). Buyer shall not disclose any such information to any person within its organization not having a need to know and shall only use such information in connection with the installation, start-up, training, maintenance, care and use of Breton Product. All originals and copies of materials provided by Seller and containing Confidential Information shall be and remain the exclusive property of Seller.

15.    Covenant Not to Solicit. Buyer covenants and agrees that for a period of three (3) years following the installation of Breton Product, Buyer shall not (i) solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of Seller at any time during the twelve (12) months preceding solicitation, employ, or otherwise by Buyer; (ii) interfere with Seller's relationship with its employees or contractors.

16.    Safety Standards. Breton Product is made of those components and specifications which are set forth herein and in the literature materials provided to Buyer with Breton Product. Breton Product, together with its components, complies with safety standard ANSI B11.19-2008 ANSI B11.TR3-2000 and CSA Z 432-04. The "industrial control panel" of Breton Product complies with NEC UL 508 A and CEC: CSA C22.2, # 14. In the event that the federal, state, and/or local laws, rules or regulations of the jurisdiction where Breton Product will be installed and/or used impose safety standards which are different from those safety standards set forth in the preceding paragraph, Buyer shall immediately notify Seller. Additionally, Buyer shall, at Buyer's own cost, make Breton Product compliant with any and all said federal, state, and/or local laws, rules and/or regulations. Buyer shall also be responsible for arranging for a work environment, where Breton Product will be installed and/or used, which complies with all federal, state, and/or local laws, rules and/or regulations and all of the safety standards. Buyer hereby agrees to indemnify Seller, its agents, employees, successors and assigns, from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses and reasonable attorneys' fees, of whatsoever kind and nature arising out of or relating to compliance with said federal, state, and/or local laws, rules and/or regulations. Buyer shall, upon request, defend any actions based on, or arising out of, any of the foregoing. It is Buyer's responsibility to verify and ascertain that Breton Product complies with all federal, state, and/or local laws, rules and/or regulations of the jurisdiction where Breton Product will be installed and/or used.

17.    Foundation Works and Technical Documentation. The execution of the foundations and the full preparation of the working site for the installation and start-up of Breton Product shall be Buyer's responsibility and shall be conducted at

Buyer's expense and not included in the contract price. Prior to or upon execution of the contract with Seller, Seller shall provide Buyer with the following documentation:

*    Final layout with sections and gabarithical measures of the building; foundation layout and standard working drawings of the foundations, realized in conformity with the Italian rules, dimensioned to bear a ground admissible load of 1,5 kg/cm² in a non-seismic zone and executed with graphic representation according to the European standards (UNI EN ISO 5455 rule). Buyer, at Buyer's expense, shall provide and be responsible for having the foundation drawings verified and modified, if required, by a chartered civil engineering office according to both the characteristics of resistance and seismicity of the ground where the foundations will be built and the local current regulations. Furthermore, Seller shall not be liable for the malfunction of Breton Product deriving from or caused by the erroneous execution of the foundations;

•    Layout of the electric, water and pneumatic feeding points, with specifications of the energy and water requirements; and

•    Operating and maintenance manuals of Breton Product, and relevant wiring diagrams.

18.    Excluded Liability. Buyer hereby expressly agrees and acknowledges that Seller shall not, under any circumstance, be liable, whether in contract or tort, for incidental and/or consequential damages, including without limitation loss of production, loss of volume and/or loss of profit.

19.    Statute of Limitations. Any claim, lien, suit, action, request or demand for or based on Seller's liability, whether in contract or in tort, shall be filed, made or brought within twelve (12) months from the date of the occurrence giving rise to Seller's breach or tort, as the case may be, regardless of the date in which the breach is discovered. Any claim, lien, suit, action, request or demand which is not filed, made or brought against Seller within said twelve (12) month period shall be forever barred, without regard to the statute of limitations set forth by law or statute.

20.    Applicable Law and Arbitration. This contract and the purchase of Breton Product shall be governed and construed for all purposes in accordance with the laws of the State of New York without giving effect to conflict of law provisions. In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties.

If the parties do not reach such solution within a period of 60 days, then, upon notice by either party to the other, the parties agree first to try in good

24/ 25

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 20,900.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



faith to settle all disputes, claims, questions, or differences by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration. The time limit before arbitration will be 90 days. The place of mediation shall be New York, State of New York. The language(s) of the mediation shall be English.

If after the time limit of 90 days the parties fail to reach a settlement, any dispute, controversy or claim arising out of or relating to this contract, purchase of Breton Product, or a breach thereof, that cannot be settled through Mediation shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules. The number of arbitrators shall be one. The place of arbitration shall be New York, State of New York. The language(s) of the arbitration shall be English.

21. Severability. If any provision herein is held invalid or unenforceable by any court of competent jurisdiction or arbitrator, the other provisions herein will remain in full force and effect. Any provision herein held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.



**Mr. Gerry Van Der Bas**
Breton USA
National Sales Manager U.S./Can...
+1 (941) 360-2700 x 5 Work
+1 (941) 330-4148 Mobile
gvanderbas@bretonusa.com
1753 Northgate Blvd
Sarasota, Fl 34234
http://www.bretonusa.com

25/ 25

Breton S.p.A.
via Garibaldi, 27 - 31030 Castello di Godego (TV) Italy - Tel. +39 0423 7691 - Fax +39 0423 769600
r.e.a. di TV 175609 - reg. imp. di TV c.f. 01880270267 - p.i. IT 01880270267
c.s. € 26.000.000,00 i.v. - Società soggetta all'attività di direzione e coordinamento di Sigep S.p.a.
www.breton.it - info@breton.it



SEARCH

🏠   ✉ NEWSLETTER   🗔 NEWSLETTER ARCHIVE

breton

PLAINTIFF'S
EXHIBIT
4

Home page  >  About Breton USA

# ABOUT BRETON USA

## FOUNDED ON SERVICE

Breton USA began our mission of servicing Breton machinery in 2004 and today we hold the exclusive contract to service Breton S.p.A. equipment throughout North America, including the United States, Canada, Mexico and the Caribbeans. Growing steadily since our first facility opened in Sarasota, Florida, we've expanded to add six North American Service Points.

Our technicians have been meeting the needs of a robust client base for years, keeping their Breton machines running smoothly, and reinforcing Breton's brand reputation for performance and dependability.

CNC Machines                                                                                          5/31/22, 7:43 PM

Beginning in July 2011, Breton USA expanded its scope to include sales and distribution fo[r] the full catalog of Breton products for all of the United States and Canada. With a product[] of machines for the Stone Working, Ceramic Processing, Machining Tools, and Engineered Stone Plant industries, each and every machine that Breton USA sells upholds a high standard of quality, performance, and safety.

With agents around the country, our sales team is dedicated to expanding our footprint in North America and to keeping our existing clientele informed on the latest technological advances that put them on the cutting edge in their industries. They are continually identifying new opportunities for growth and new customers with a real need for Breton's product line.

**Unifying the sales and service experience is what makes us Breton USA.**

**Phone**: +1 (941) 960-8753
**Email**: MachineSales@BretonUSA.com



Breton | Job Opportunities | Legal Notices | Cookie policy | Terms of use
Web agency Active121 - strategia web

🏠 Back to Top ⌃

PLAINTIFF'S EXHIBIT

Home page > Field Service

# FIELD SERVICE



# SURPASSING YOUR SERVICE EXPECTATIONS

Breton USA is solely responsible for servicing every Breton machine in North America. It's our job to provide a level of service and support equal to the reputation for quality and excellence that is carried by the machines themselves.

To uphold that standard, we have six service points spread out over the United States and Canada and exclusively employ technicians trained by Breton SpA.

Backed by their years of experience servicing Breton machines in the field, no one is more qualified to service Breton's North American clients than the Breton USA organization.

**Phone:** +1 (941) 360 – 2700 | Extension 1
**Email:** service@bretonusa.com

## SARASOTA SERVICE POINT

We have technicians on call at our Sarasota, Florida area office so that we can respond to your service requests in a timely manner. Don't hesitate to contact us for all your field service needs.

**Breton USA Sarasota**
1753 Northgate Boulevard
Sarasota, Florida 34234 – USA

## DETROIT SERVICE POINT

We have technicians on call at our Detroit, Michigan area office so that we can respond to your service requests in a timely manner. Don't hesitate to contact us for all your field service needs.

**Breton USA Detroit**

6107 Progressive Drive, Unit D
Sterling Heights, Michigan 48312 – USA

## WEST COAST SERVICE POINT

We have technicians on call at our West Coast service point so that we can respond to your
service requests in a timely manner. Don't hesitate to contact us for all your field service
needs.

**Breton USA West Coast**

## MONTREAL SERVICE POINT

We have technicians on call at our Saint-Laurent, Quebec service point so that we can
respond to your service requests in a timely manner. Don't hesitate to contact us for all your
field service needs.

**DEG Technologies, Inc.**
720 Rue du Caven Circle
Saint-Laurent, Quebec H4M 2C2 – Canada

## TORONTO SERVICE POINT

We have technicians on call at our Toronto, Ontario service point so that we can respond to
your service requests in a timely manner. Don't hesitate to contact us for all your field service
needs.

**JD Technical Industries**
1503 Riley Avenue
Burlington, Ontario L7M 3C1 – Canada

## ONTARIO SERVICE POINT

We have technicians on call at our Ontario service point so that we can respond to your service requests in a timely manner. Don't hesitate to contact us for all your field service needs.

**Advanced Cutting**
100 Bass Pro Mills Drive,
Concord, ON L4K 5X1 - Canada





Job Opportunities | Legal Notices | Cookie policy | Terms of use

Web agency Active121 - strategic web

 Back To Top

Company

PLAINTIFF'S
EXHIBIT

5/31/22, 7:42 PM

SEARCH

🏠  ENGLISH  ⌄

# breton

NEWS | COMPANY | CONTACT

Home > Company

# COMPANY



Company                                                                                                              8/31/22, 7:42 PM

Breton S.p.A. is a global leading company manufacturing machines to process natural stone and metals as well as compound stone processing plants.
Its headquarters are in Castello di Godego, Veneto, but the firm is operating worldwide.

Breton S.p.A counts more than 900 employees, 7 branches abroad and a 200-million-Euro annual turnover.

Breton has grown and ascertained itself on the market thanks to its winning philosophy dedicated to research and development, ongoing improvement, innovation and high-quality products and services.

This philosophy greatly desired by the owners is in fact created by all the people who work within the company and thanks to their creativity and dedication, have contributed to and continue to contribute each and every day to the success of this company.

Breton offers the most complete range of equipment, machines and plants to carry out all the industrial operations of marble, granite and ornamental stone in general: from the cutting of blocks to the finishing and packaging of products.

Breton also manufactures famous Bretonstone®, Bretonterastone® and Bretonstone Cement® systems for the manufacturing of composite stones, and polishing lines for porcelain stoneware.

In the nineties, Breton forced its way in the field of high speed numerical

Company                                                              6/31/22, 7:42 PM

control machining centres, becoming one of the world most important manufacturers in few years.

Breton holds the exclusive right on the "Metalquartz" technology applied to the sector of high speed machining centres, which allowed to considerably increase the machining performances. In the course of time, Breton developed a full range of machining centres, that satisfy all the requirements of the following industrial sectors: Aerospace, Defence, Aeronautics, Automotive, Naval, Motor Racing, Gears, Energy, Die, Automotive and Naval Modelling and Prototyping, General Manufacturing industry.

Breton's range of machining centres was specially conceived for working the following materials: Aluminium, Steel, Titanium, Special Alloys, Composites.



Job Opportunities | Legal Notices | Disclaimer | Privacy | Cookie policy
Breton S.p.A. - VAT code: 01880270267 | Web agency Active121

Back to Top